1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

ALUTIIQ INTERNATIONAL SOLUTIONS, LLC,

                      Plaintiff,

    v.

OIC MARIANAS INSURANCE CORPORATION, *et al.*,

                     Defendants.

Case No. 2:10-cv-01189-APG-NJK

**ORDER**

(Plf.'s Motion for Default Judgment – dkt. no. 84)

## I.    SUMMARY

Before the Court is Plaintiff's Motion for Default Judgment. (Dkt. no. 84.)  Because the underlying liability of the contracting insurance company has yet to be established, entering default judgment against the company's principals is premature.  Thus, the Motion is denied without prejudice.

## II.    BACKGROUND

This dispute arises out of Defendant OIC Marianas Insurance Corporation's ("OIC") alleged failure to pay Plaintiff Alutiiq International Solutions, LLC ("Plaintiff") amounts owed under a performance bond.  The background facts are described more particularly in the Court's prior orders.  Pertinent to this Motion is that Plaintiff filed suit against OIC on July 19, 2010, seeking recovery on the performance bond (the "Initial Action").  On May 13, Judge Dawson entered Default Judgment against OIC for failure to answer the Complaint and comply with the

1  Court's order. (Dkt. no. 31.) However, Judge Dawson later set aside the default and its

2  corresponding judgment (dkt. no. 43), and OIC filed an Answer (dkt. no. 45). Plaintiff has since

3  amended its complaint to add claims for fraud, negligent misrepresentation, and violation of

4  Nevada and New Mexico statutes governing insurance companies ("Complaint I"). (Dkt. no. 56.)

5  OIC currently faces potential sanctions for its conduct in discovery. (Dkt. nos. 94, 97.)

6      After Judge Dawson initially entered Default Judgment against OIC, Plaintiff filed a

7  separate lawsuit (the "Second Action") against the two principals of OIC: Dennis Lyon ("Lyon"),

8  the Vice President and majority shareholder of OIC, and Ruth Agnes Chavez ("Chavez"), Lyon's

9  wife and the sole minority shareholder of OIC. Complaint, *Alutiiq Int'l Solutions, LLC v. Lyon*,

10  No. 2:11-cv-01104-APG-NJK (D. Nev. July 5, 2011) [hereinafter, *Second Action*], Dkt. no. 1.

11  Plaintiff also listed as defendants entities connected with Lyon and Chavez, namely: Oceania

12  Insurance Corporation ("Oceania") and Native American Funds Management Services

13  ("NAFMS").[1] Plaintiff's Complaint ("Complaint II") alleges facts similar to those in Complaint

14  I, and asserts that the new parties are liable for the judgment against OIC in the Initial Action, and

15  for their personal roles in the performance bond transaction. *Id.* Plaintiff additionally added a

16  claim for violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") seeking

17  treble damages. *Id.*

18      In the Second Action, the Clerk of the Court entered default against Oceania and NAFMS

19  for failure answer Complaint II. Entry of Default, Dkt. no. 23, *Second Action*. Additionally,

20  Judge Navarro struck Lyon's answer and entered default against him due to extensive discovery

21  violations. Order, *Second Action*, Dkt. no. 98. However, in ruling on Plaintiff's Motion for

22  Default Judgment, Judge Navarro declined to engage in a default judgment analysis at that time

23  because Complaint II relied on the default judgment against OIC entered in the Initial Action,

24  which by then had been set aside. *Id.* Thus, Complaint II's simple reference to the amount of

25  that judgment for purposes of establishing damages was no longer sufficient. *Id.* Thus, Judge

[1] Plaintiff also originally included Melissa San Martin ("San Martin"), a Nevada resident and fund manager for NAFMS. Ms. San Martin has since been voluntarily dismissed.

2

1  Navarro denied the Motion for Default Judgment without prejudice, to allow Plaintiff to fully
2  brief the damages issues. *Id.*

3       The two actions were consolidated, and Plaintiff filed the instant Motion for Default
4  Judgment against Defendants Lyon, NAFMS, and Oceania (collectively, the "Default
5  Defendants") in the consolidated docket. (Dkt. no. 84.)  In response to the Court's prior Order in
6  the Second Action, Plaintiff provided affidavits supporting its damage allegations, requesting
7  $1,562,665 in base damages, $4,657,995 in punitive damages, pre-judgment interest, and
8  previously-awarded sanctions.  In total, Plaintiff requests default judgment against the Default
9  Defendants in the amount of $5,369,818.81, plus any additionally accrued pre-judgment interest.
10 **III.    DISCUSSION**

11      **A. Legal Standard**

12      Obtaining a default judgment is a two-step process. *Eitel v. McCool*, 782 F.2d 1470, 1471
13 (9th Cir. 1986).  First, "[w]hen a party against whom a judgment for affirmative relief is sought
14 has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the
15 clerk must enter the party's default." Fed. R. Civ. P. 55(a).  After the clerk enters default, a party
16 must seek entry of default judgment under Rule 55(b).

17      Upon entry of default, the court takes as true the factual allegations in the non-defaulting
18 party's complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)
19 (quoting *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)).  Nonetheless,
20 "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter of
21 right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (quoting
22 *Valley Oak Credit Union v. Villegas*, 132 B.R. 742, 746 (9th Cir. BAP 1991)).  Whether a default
23 judgment will be granted is within the court's discretion. *Id.*

24      The Ninth Circuit has identified the following factors as relevant to determining whether
25 to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the
26 plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake
27 in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was
28

1 due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

2 Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

3 **B. Analysis**

4 Because Plaintiff seeks default judgment as to only some defendants, and the liability of

5 those defendants is factually and legally premised on the liability of other non-defaulting

6 defendants, entering default judgment is premature at this stage. In cases involving multiple

7 defendants, a district court has the authority to enter final judgment against some parties while

8 allowing the suit to proceed against others, if it determines there is no just reason for delaying the

9 entry of judgment. Fed. R. Civ. P. 54(b). This determination is within the discretion of the

10 district court. *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980).

11 However, in the context of entering a default judgment against some but not all

12 defendants, the "just reason for delay" determination must consider whether entry of default

13 judgment against only some defendants could lead to logically inconsistent results. *See In re*

14 *First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). Where claims against a defaulting

15 defendant and a non-defaulting defendant are distinct and easily separated, there is less chance of

16 inconsistent results if default judgment is entered against the defaulting party and the case

17 proceeds against the non-defaulting party. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*,

18 194 F.Supp.2d 995, 1005-10 (N.D. Cal. 2001). However, where the defendants are similarly

19 situated such that they would share or have similar defenses, entering default judgment early

20 could lead to logically inconsistent results if the non-defaulting defendant ultimately proves the

21 plaintiff's claims are invalid. *First T.D.*, 253 F.3d at 532. Consequently, where non-defaulting

22 and defaulting parties are similarly situated, "the preferred practice is for the court to withhold

23 granting default judgment until the action is resolved on the merits against non-defaulting

24 defendants: if plaintiff loses on merits, the complaint should then be dismissed against both

25 defaulting and non-defaulting defendants." *Animal Sci. Prods., Inc. v. China Nat'l Metals &*

26 *Minerals Imp. & Exp. Corp.*, 596 F.Supp.2d 842, 849 (D. N.J. 2008); *see also Frow v. De La*

27 *Vega*, 82 U.S. 552, 554 (1872); *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 434-35 (E.D. Va.

28

1  2006); *Northland Ins. Co. v. Cailu Title Corp.*, 204 F.R.D. 327, 330 (W.D. Mich. 2000);

2  *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London*, 378 F. Supp. 403, 416 (S.D.N.Y.

3  1974).

4        The only non-defaulting party under Complaint II is Chavez. As Chavez is listed together

5  with Lyon in all the claims, the claims are not easily separable among the defendants. However,

6  although Chavez is similarly situated with Lyon, it is plausible that they would have separate

7  defenses, as Chavez has asserted that she was merely a passive investor in the transactions. Thus,

8  entering default judgment would not necessarily produce a logically inconsistent result because

9  one possible outcome of the case is having liability imposed on the Default Defendants[2] and not

10  on Chavez.

11        Nonetheless, Complaint II cannot be viewed in isolation because the claims contained

12  therein necessarily depend on the allegations made against OIC in Complaint I. Even Plaintiff's

13  fraud-based, RICO, and insurance statute claims asserted against the Default Defendants for their

14  individual actions are factually premised on OIC's solicitation, issuance, and non-payment of the

15  performance bond. Consequently, if OIC can prove Plaintiff's claims are without merit, the

16  Default Defendants also would be absolved of liability. Accordingly, entering default judgment

17  against the Default Defendants now, while allowing the case to proceed to establish OIC's

18  liability, could lead to a logically inconsistent result.

19        Therefore, just reasons exist to delay the entry of default judgment. The Court recognizes

20  that the delay of default judgment could result in some prejudice to Plaintiff, especially given the

21  Defendants' conduct in discovery. However, with the question of OIC's liability unresolved, the

22  merits of Plaintiff's claims remain in question, and there is a possibility of a dispute concerning

23  material facts. Given the large amount of money sought in the Motion for Default Judgment,

24  these *Eitel* factors weigh against the entry of default judgment. Nonetheless, the defaults entered

25  against the Default Defendants will remain in place. Additionally, nothing in this Order prevents

26

27
---
[2] Perhaps with the exception of Oceania, whose liability is derived from the fact that it is wholly owned by
28  Chavez.

Magistrate Judge Koppe from recommending case dispositive (or other) sanctions against OIC or the other defendants, if she determines such sanctions are appropriate.  Plaintiff's Motion is denied without prejudice.  Plaintiff may renew the motion if and when OIC's liability is established.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Default Judgment is DENIED without prejudice.

DATED THIS 5th day of July, 2013.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE