**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\*\*\***

ALUTIIQ INTERNATIONAL SOLUTIONS, LLC,

        Plaintiff,

vs.

OIC MARIANAS INSURANCE CORP, *et al*.,

        Defendants.

Case No. 2:10–cv–1189

**ORDER AND
REPORT & RECOMMENDATION**

    This matter involves Alutiiq International Solutions' consolidated action for recovery on a performance bond. The defendants are OIC Marianas Insurance Corporation, its majority shareholder, Dennis Lyon, Ruth Lyon, and Native American Funds Management. Before the court are Alutiiq's supplemental motion for case-dispositive sanctions (#129[1]) and four ancillary motions (#136, #137, #140, and #152). For the reasons stated below, the court recommends granting the motion for case-dispositive sanctions (#129) and denies the remaining motions as moot.

**BACKGROUND**

    Alutiiq requests case-dispositive sanctions for years of discovery abuses. For purposes of the motion, the relevant facts include: (1) the complaint's factual allegations; (2) Defendants' prior discovery abuses; (3) the circumstances precipitating the current discovery dispute; and (4) a brief statement of the issues before the court. Each is discussed below.

---

[1] Parenthetical citations refer to the court's docket.

## I.   OIC Marianas Underwrites Alutiiq's Protect

This lawsuit involves a construction insurance contract. (*See* Amend. Compl. (#56) at ¶¶ 6–11). Plaintiff Alutiiq International Solutions was the general contractor, Defendant OIC Marianas Insurance Corporation insured a subcontractor, NCC Electrical, and defaulted defendant Dennis Lyon is OIC Marianas' majority shareholder. (*Id.* at ¶¶ 2–6).

Events began in 2008. The Army Corp of Engineers awarded Alutiiq a contract to build the OJO Encino Day School in New Mexico. (*See* Amend. Compl. (#56) at ¶ 6). Under the Miller Act, Alutiiq was required to post a payment performance bond in the event that the project could not be completed on time. *See* 40 U.S.C. § 3131(b). Accordingly, when Alutiiq subcontracted with NCC Electrical Services to complete electrical work worth $2,414,001.88, Alutiiq required NCC Electrical Services to post its own bond. (*See id.* at ¶¶ 8–11). NCC Electrical complied and obtained a performance bond from OIC Marianas, a company headquartered in Saipan. Under the terms of the final bond, if NCC Electrical failed to complete the electrical work, then OIC Marianas would allegedly[2] be liable to Alutiiq for $2,414,001.88.[3] (*Id.*)

Unbeknownst to Alutiiq or NCC Electrical, OIC Marianas was—allegedly—a dishonest corporation. (*See id.* at ¶ 12). Between 2003 and 2007, Lyon and OIC Marianas were subjected to cease-and-desist orders in Nevada, Georgia, Florida, Montana, Connecticut, Washington, California, Ohio, Texas, Oklahoma, Maryland, and New Mexico. (*Id.* at ¶¶ 12–14). OIC Marianas had allegedly committed fraud, overstated its assets, and operated without the required state licenses. (*Id.*) Consequently, Alutiiq ran into serious problems when, on May 5, 2010, NCC Electrical defaulted.

---

[2] OIC Marianas argues that the bond's terms only named the Corp of Engineers as a beneficiary.
[3] The original amount of the bond was for a lesser amount and the original oblige was allegedly the United States. However, the bond was increased after NCC Electrical took on additional work under the subcontract with Alutiiq and the name of the oblige was corrected or changed to name Alutiiq.

Alutiiq demanded that OIC Marianas satisfy its obligations under the bond, but received no response. (*See id.* at ¶¶ 19–24).

## II.   Defendants' Abuse Discovery

This spawned a series of lawsuits. The first was filed on July 19, 2010, in response to OIC Marianas' failure to perform its obligations under the bond. (*See generally* Compl. #1). The second action was filed on July 5, 2011, upon Alutiiq's discovery that Lyon, OIC Marianas, and others (i.e., Ruth Chavez Lyon, Melissa San Martin, and Native American Funds Management) are allegedly part of a scheme to defraud surety bond holders. *See Alutiiq Int'l Solutions v. Lyon, et al.*, No. 2:11–cv–01104–JAD–VCF, Compl. #1 (D. Nev. July 5, 2011). A third was filed in the District of New Mexico.[4]

Litigation has been straining. In the first action, the Defendants were served; but they failed to plead or otherwise defend. Accordingly, on May 13, 2011, the court entered default judgment against OIC Marianas. (Default J. #31). Meanwhile, on August 18, 2011, in the second action, the clerk of court entered default against Native American Funds Management and Oceania Insurance Corporation. (Clerk's Default (#23). However, the court's entry of default judgment in the first action and the clerk's entry of default in the second action were eventually set aside. (Aug. 8, 2012, Order #43); (March 19, 2012, Order #52).

Both actions proceeded to discovery. Discovery also proved straining. In the first action, Alutiiq filed two motions to compel (#53, #60), which after two hearings (#68, #85), were granted (#94). However, Defendants refused to comply with the court's discovery orders. The court repeatedly ordered the parties to meet and confer and file a joint statement regarding the outstanding discovery or renew prior motions to compel and motions for sanctions. (*See* Mins. Proceedings #94, #127). A joint

---

[4] Alutiiq prevailed in the third lawsuit. It is otherwise irrelevant to the motions before the court.

statement was filed; but the discovery dispute went unresolved. (*See* Joint Status Rep. #101). As a result, Alutiiq filed the instant supplemental motion for discovery sanctions (#129).

The issues raised by this motion echo the problems that Alutiiq faced while conducting discovery in the second action. There too, discovery was strained. Alutiiq filed one motion to compel (#36) and one motion for sanctions (#71). Alutiiq had moved to compel, not simply because Lyon's discovery responses were deficient, but because Lyon had not bothered to gather documents needed to complete a response. (*See* May 23, 2012 Order (#69) at 2–3). The court held three dispute resolution hearings (#44, #57, #67). But each was frustrated by Lyon's apparent lack of knowledge regarding the documents Alutiiq requested. Consequently, the Honorable Peggy A. Leen, U.S. Magistrate Judge, ordered Lyon "to submit to a telephonic deposition to identify any responsive documents, their location, and what effort Lyon made to locate them." (Mins. Proceedings #57).

Alutiiq's motion to compel and motion for case-dispositive sanctions were eventually granted. (#70, #89). As Judge Leen explained, "[t]he court expected that Lyon's deposition would clarify, narrow and potentially eliminate further motion practice. It did not. Rather, it illuminated the halfhearted efforts Lyon took to comply after being warned of potential case-dispositive sanctions." (Report & Rec. (#90) at 7:6–7). It was expected that Lyon would travel to OIC Marianas' headquarters in Saipan, examine the companies' files, and return with responsive documents. But, he did not. Judge Leen went on: "Lyon conceded at his deposition that he had not traveled to the Northern Mariana Islands to gather responsive financial information about Defendant Oceania and [OIC Marianas], that he had not directed the companies' outside auditor to send him materials, and had not made any real effort to review documents he did produce to determine whether more documents should be gathered." (May 23, 2012 Order (#69) at 3:18–22).

As a result, the court struck Lyon's answer and entered default judgment against him. (*See* Order #98) (adopting Report & Rec. #90). In rendering a report and recommendation, Judge Leen identified the following nine discovery abuses:

1. On November 15, 2011, Alutiiq served written discovery on Lyon, but Lyon failed to respond;

2. On February 23, 2012, the court granted Alutiiq's motion to compel and "strongly urged" defense counsel to persuade his client to provide responsive documents or "face severe sanctions, which include case-dispositive sanctions;"

3. On March 12, 2012, the court found that Lyon failed to comply with its order;

4. On April 3, 2012, the court found that Lyon had still failed to comply with its order;

5. On May 8, 2012, following Lyon's deposition, Alutiiq reported that Lyon admitted that he did not travel to the Northern Mariana Islands to gather responsive documents or direct his entities' outside auditors to send responsive documents to complete discovery;

6. On May 21, 2012, the court again ordered Lyon to produce responsive documents;

7. On May 23, 2012, the court entered a written order, again instructing Lyon to produce responsive documents and warning that "[f]ailure to comply with this order **will** result in a recommendation to the district judge that a default judgment be entered" (emphasis original);

8. On June 4, 2012, defense counsel reported that responsive documents were forthcoming but "likely incomplete;" and,

9. On June 4, 2012, Lyon produced supplemental documents but admitted that he "has not produced documents requested by Plaintiff relating to the financial conditions of Oceania's or Defendant OIC Marianas Insurance Corp.'s financial conditions."

(Report & Rec. (#90) at 1–3).

## III. Circumstances Underlying the Current Dispute

These discovery abuses set the stage for the dispute before the court.[5] On February 1, 2011, Alutiiq served OIC Marianas—which is controlled by Lyon—with written discovery.

---

[5] On April 16, 2013, the first and second actions were consolidated into this matter. (*See id.* at Order #102).

5

(*See* Pl.'s Supp. Mot. (#129) at 3:5) (citing Pl.'s Mot. to Compel (#53) at 4:15). OIC Marianas failed to respond, in part because OIC Marianas refused to communicate with defense counsel regarding Alutiiq's discovery request. (*See* Pl.'s Mot. to Compel (#53) at 4:15) (citing Def.'s Mot. to Withdraw #19). Accordingly, defense counsel moved to withdraw. (*Id*.) ("Defendant has failed to respond to numerous and varied e-mails, correspondence, and voice messages. . . . Because Defendant has ceased all communication with this law firm, Counsel for the Defendant is unable to respond to discovery."). After the court granted defense counsel's motion to withdraw, OIC Marianas was unable to retain new counsel. This led to the clerk's entry of default, which was eventually set aside. (*See* Clerk's Default (#23)).

Once new counsel was retained, on September 19, 2012, OIC Marianas finally responded to Alutiiq's discovery request. (Pl.'s Mot. to Compel (#53) at 7–8). However, the responses to interrogatories were incomplete and no documents were produced. (*Id*.) Counsel conducted several meet and confers with no success. (*Id*. at 8–11). Consequently, Alutiiq filed its first motion to compel on October 4, 2012.

A second motion to compel followed (#60). On September 10, 2012, Alutiiq had served OIC Marianas with a second set of interrogatories and requests for production of documents. (Pl.'s Mot. to Compel (#60) at 3: 7–8). OIC Marianas responded; but its production was again incomplete. Several interrogatories were unanswered and OIC Marianas allegedly "omitted hundreds if not thousands of documents from its document production." (*Id*. at 3:11–12).

On November 29, 2012, the court held an initial hearing on Alutiiq's motions to compel (#68). Shortly thereafter, OIC Marianas's new counsel moved to withdraw. (*See* Mot. to Withdraw #77). Again, OIC Marianas refused to communicate with counsel and this time also refused to pay its attorney. (*Id*. at 2:13–17). OIC Marianas allegedly owed defense counsel $18,946.30. (*Id*.)

6

On May 13, 2013, the Honorable Nancy J. Koppe, U.S. Magistrate Judge held a second hearing and ruled on Alutiiq's motions to compel. Judge Koppe ordered OIC Marianas to (1) provide complete responses to several interrogatories, (2) produce responsive documents to numerous requests for production of documents, and (3) explain in detail how OIC Marianas conducted the search to produce responsive documents. (*See* Mins. Proceedings #94). Additionally, Judge Koppe ordered OIC Marianas to (1) comply with her order by May 28, 2013 or possibly face "severe sanctions including case-dispositive sanctions," (2) file a joint status report regarding the discovery dispute by June 3, 2013, and (3) meet and confer with Alutiiq.

On June 3, 2013, the parties filed the joint status report. In the report, Alutiiq stated that OIC Marianas failed to produce any additional documents, offer any explanation regarding the search it conducted to discover responsive documents, failed to provide any new information in response to Alutiiq's interrogatories. (Joint Status Rep. (#101) at 1–7). In response, OIC Marianas reported that (1) it was unable to comply with Judge Koppe's order because Alutiiq refused to cooperate and "make known what specific documents it sought," (2) it was not adequately represented by prior counsel and "should be give and fair shake," and (3) the court should order a meet and confer regarding the remaining discovery disputes. (*Id*. at 7–12).

This triggered another motion for case-dispositive sanctions by Alutiiq. (#97). In the motion, Alutiiq argued that OIC Marianas' disregard for Judge Koppe's order parroted Lyon's disregard for Judge Leen's order. In both cases, Lyon—who is OIC Marianas' majority shareholder—refused to search for responsive documents, disregarded court-ordered deadlines, and effectively hijacked litigation.

**IV.**     **The Dispute Before the Court**

Although Alutiiq filed its motion for case dispositive sanctions (#97) on May 21, 2013, the court was unable to immediately address Alutiiq's motion. In November 2013, Judge Koppe recused herself following a settlement conference. (*See* Doc. # 115). The action was reassigned to the undersigned magistrate judge and, on December 9, 2013, a motion hearing was held.

Following the hearing, the court denied Alutiiq's motion for sanctions without prejudice and ordered the parties to meet and confer regarding the outstanding discovery ordered by Judge Koppe. (*See* Mins. Proceedings #127). Ten discovery requests were at issue: interrogatory five and requests for production of documents ten and eleven from Alutiiq's first written discovery requests and interrogatories two, six, seven, eight, ten, and requests for production of documents two and four from Alutiiq's second written discovery requests. (*Id*. at ¶ 8). The court also ordered the parties to file a joint statement regarding the outstanding discovery and set the dispute for an evidentiary hearing since relevant facts were unsettled. (*Id*.)

However, proceedings faltered again. The parties never filed a joint statement. Consequently, Alutiiq filed the instant supplemental motion for case-dispositive sanctions (#129). Alutiiq argues that case-dispositive sanctions should be imposed because OIC Marianas repeatedly refused to comply with Judge Koppe's order regarding the ten discovery requests and is exhibiting same behavior for which Judge Leen recommended case-dispositive sanctions. (*See generally* #129).

In response, OIC Marianas treated Alutiiq's motion for sanctions as a motion to compel. OIC Marianas argues that (1) it does not know what documents it is supposed to produce; (2) Alutiiq's interrogatories do not have to be answered because they exceeded the maximum number of interrogatories; (3) Alutiiq's discovery requests are overbroad; (4) Alutiiq's discovery requests lack

8

specificity; and (5) OIC Marianas fully complied with Judge Koppe's order. (*See generally* Def.'s Opp'n #134). OIC Marianas also moves to disqualify Plaintiff's counsel.

However, on January 17, 2014, just one week after OIC Marianas filed a response, it filed a motion for leave to supplement its response (#136). This motion directly contradicts OIC Marianas' earlier filing. Here, OIC Marianas argues that it (1) did in fact comply with Judge Koppe's May 13, 2013 order but (2) delayed producing responsive documents because Alutiiq "had no interest in cooperating in discovery" and the 2013 holidays prevented OIC Marianas from being able to obtain the documents.

OIC Marianas' supplemental response also explains the steps that Lyon, as OIC Marianas' officer, took to satisfy Judge Koppe's order: "I made one trip to Saipan and brought back quite a bit of documents for the Alutiiq lawsuit [. . .] SUMMARY: I Dennis Joe Lyon upon the **first** request for production and discovery made an all[-]out attempt to locate and produce all documents and explanation [*sic*] to interrogatories." (*See* Lyon Letter (#134) at 76) (emphasis added).

On May 16, 2014, the court held a hearing on the parties' motions. The court heard oral argument on two topics: (1) whether OIC Marianas complied with Judge Koppe's order by producing documents in response to Alutiiq's first and second written discovery requests and, if not, (2) whether case-dispositive sanctions should be imposed. This report and recommendation follows.

## DISCUSSION

The motions before the court raise two general questions. First, whether OIC Marianas complied with Judge Koppe's order by satisfying Alutiiq's first and second written discovery requests. Second, whether case-dispositive sanctions should be imposed if the court finds that OIC Marianas did not satisfy Alutiiq's discovery requests. Both questions are addressed below.

## I.  Whether OIC Marianas Satisfied Judge Koppe's Order

The first question posed by the parties' filings is whether OIC Marianas complied with Judge Koppe's May 13, 2013 order. OIC Marianas makes five arguments in support of its position that it either complied with the order or should be excused from doing so. OIC Marianas asserts that (1) it does not know what documents it is supposed to produce, (2) Alutiiq's interrogatories exceeded the maximum number of interrogatories permitted, (3) Alutiiq's discovery requests are overbroad, (4) Alutiiq's discovery requests lack specificity, and (5) OIC Marianas fully complied with Judge Koppe's order. (*See generally* Def.'s Opp'n #134). These arguments are meritless.

OIC Marianas' second, third, and fourth arguments are objections to Alutiiq's discovery requests. These objections have been waived. This dispute began in 2011. It is now 2014. Under the Federal Rules of Civil Procedure, OIC Marianas had thirty days from the date that Alutiiq's discovery requests were served to object. *See* FED. R. CIV. P. 33(b)(4), 34(b). OIC Marianas did not object. Therefore, these arguments fail as a matter of law because OIC Marianas waived its right to object. *Id.*; *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981).

OIC Marianas's first and fifth arguments are equally ineffective. OIC Marianas argues that (1) it should not be compelled to produce additional documents because it does not know what documents it is supposed to produce and (2) it fully complied with Judge Koppe's order, which instructed OIC Marianas to produce additional documents. As an initial matter, these arguments are contradictory and, therefore, fail to persuade. However, even if the court assumes that the arguments are not contradictory, the court remains unpersuaded.

First, the court is not convinced that OIC Marianas does not know which documents to produce. OIC Marianas argues that it does not know what documents to produce because the documents probably do not exist. On May 13, 2013, Judge Koppe rendered a detailed order specifying which documents OIC

10

Marianas must produce. (*See* Mins. Proceedings #94). The court will not relitigate the fundamental assumption underlying Judge Koppe's prior order: that responsive documents do, in fact, exist. Courts are loathe to revisit their own decisions unless extraordinary circumstances show that its prior decision was clearly erroneous or would work a manifest injustice. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). Here, OIC Marianas did not provide any evidence demonstrating that the Judge Koppe's prior factual finding was clearly erroneous or manifestly unjust.

Even if the court were willing to relitigate the assumption that responsive documents exist, the court would find that OIC Marianas waived this objection. If no documents existed, then OIC Marianas should have asserted this fact over a year ago. It did not do this. (*See generally* Def.'s Opp'n (#53) at 2–10). Rather, the company disregarded Judge Koppe's May 18, 2013 deadline and instead produced a statement by Dennis Lyon in January 2014, asserting that "I made one trip to Saipan and brought back quite a bit of documents for the Alutiiq lawsuit [. . .] SUMMARY: I Dennis Joe Lyon upon the **first** request for production and discovery made an all[-]out attempt to locate and produce all documents and explanation [*sic*] to interrogatories." (*See* Lyon Letter (#134) at 76) (emphasis added).

Based on the court's record this is false. On April 3, 2012, Judge Leen ordered Lyon's deposition to determine what, if any, steps he took to obtain documents. During the deposition the following exchange occurred:

> Q.    In fact, you haven't been to Saipan since receiving Exhibit 1 (i.e., Alutiiq's first request for production); isn't that right?
>
> A.    That's correct.
>
> Q.    So although you may have gathered documents when you were in Saipan last, you didn't even know what Alutiiq was asking you for in Exhibit 1 at the time; right?
>
> A.    That's correct.
>
> [. . .]

11

> Q.    What I asked you was specifically where have you personally searched to gather documents responsive to Exhibit 1?
>
> A.    Well, inadvertently I searched Saipan previous to Exhibit 1, so I did. But if you want to – I didn't. I searched the Internet; I searched emails; I searched my house. That's where I searched.

(Lyon Depo. (#135-6) at 4). Comparable testimony was elicited from Melissa San Martin during the court's May 16, 2014 evidentiary hearing. Counsel for Alutiiq inquired whether Ms. San Martin traveled to Saipan to obtain responsive documents. She responded that she did not and indicated that she had no way of knowing whether the Saipan office forwarded a complete set of documents. (*See* Mins. Proceedings #153).

The court is also unpersuaded by OIC Marianas's argument that it fully complied with Judge Koppe's order. OIC Marianas proffered no evidence that it produced additional documentation by Judge Koppe's May 28, 2013, deadline. (*See* Mins. Proceedings #94). Instead, in support of its opposition to the instant motion, OIC Marianas re-submitted documents that it previously produced, arguing that this constitutes everything. This argument lacks merit. Accepting OIC Marianas's argument requires the court to assume that additional responsive documents never existed, even though Judge Koppe ordered OIC Marianas to produce additional responsive documents. As stated above, the court will not entertain this assumption.

Additionally, OIC Marianas' own litigation conduct undermines this argument. On January 6, 2014, OIC Marianas submitted its opposition to Alutiiq's motion for sanctions, arguing that it complied with Judge Koppe's order. (*See* Def.'s Opp'n (#134) at 23). Nonetheless, on January 17, 2014, OIC Marianas produced supplemental discovery responses, as ordered by Judge Koppe. (*See* Mot. for Leave #136). Included in the supplemental response is a statement from OIC Marianas, asserting that the discovery could not have been produced earlier because of the holidays and because "Plaintiff simply had no interest in cooperating in discovery." (*Id*. at 1:13, 2:13).

The court's conclusion that OIC Marianas failed to comply with Judge Koppe's order was corroborated during the court's May 16, 2014 evidentiary hearing. For instance, OIC Marianas essentially conceded that it failed to provide a supplemental response addressing the heart of Alutiiq's fifth interrogatory. (*See* Mins. Proceedings (#153) at 17:00). The fifth interrogatory states: "To the extent that you contend that Alutiiq is not the obligee under the Performance Bond, describe in full detail all facts upon which you base your contention." (Pl.'s Mot. for Sanctions (#129) at 4). OIC Marianas answered Alutiiq's interrogatory, stating that Alutiiq is not the obligee on the bond because the first bond names the United States, not Alutiiq. As discussed during the hearing, this answer ignores the facts that OIC Marianas issued a second bond, which named Alutiiq as the oblige, and that Judge Koppe ordered OIC Marianas to identify facts in support of its position that the second bond does not identify Alutiiq as the obligee. (*See* Mins. Proceedings (#153) at 17:00). OIC Marianas refuses to supplement its response.

The evidentiary hearing also demonstrated that OIC Marianas failed to comply with requests for production ten and eleven. Request ten states, "Please produce all documents that support, evidence, or corroborate your Answer to the preceding interrogatory [INT 3], including but not limited to all bonds, contracts, or other agreements entered into by you in Nevada and New Mexico within the past five years." (Pl.'s Mot. for Sanctions (#129) at 5). Request eleven states, "Produce any and all documents that support, evidence, or corroborate your Answer to the preceding interrogatory [INT 4]." (*Id*. at 6).

As discussed during the hearing, OIC Marianas should have produced the project's underwriting file in response to these requests. (*See* Mins. Proceedings (#153) at 27:00). It did not. Rather, OIC Marianas produced a collection of documents pertaining to the underwriting file that were intermingled with litigation documents produced by Alutiiq. When asked whether OIC Marianas could sift through the comingled documents and produce an underwriting file, Ms. San Martin testified on behalf of OIC

Marianas that "I definitely. . . more likely could. There is a large amount of information here." (*Id.*) Ms. San Martin further testified that it would take her between one and two hours to assemble the file and that she is "ninety-nine percent sure" that OIC Marianas produced all documents pertaining to the underwriting file. However, Ms. San Martin also conceded that she has no way of knowing whether all of the documents were produced because she has never been to the Saipan office where the documents were kept. (*Id.*)

This testimony strongly militates in favor of finding that OIC Marianas disregarded Judge Koppe's order. OIC Marianas did not dispute that it should have produced the underwriting file in response to the tenth and eleventh requests for production. (*See* Mins. Proceedings (#153) at 27:00). Additionally, OIC Marianas conceded—and the court found on the record—that OIC Marianas' production violated the Federal Rules of Civil Procedure because it produced comingled documents. (*Id.*); *see also* FED. R. CIV. P. 26(b) Advisory Comm. Notes 2006 Amend.

The court similarly finds that OIC Marianas disregarded Judge Koppe's order with regard to Alutiiq's fourth request for production. This request states: "Produce any and all documents that relate in any way to any cease and desist letters sent by all state and/or federal agencies to you at any time in the past ten (10) years." (Pl.'s Mot. for Sanctions (#129) at 6). During the court's evidentiary hearing, OIC Marianas asserted, but could not demonstrate, that it satisfied this request. The court granted OIC Marianas leave to identify the bates numbered documents that respond to this request. OIC Marianas supplemental briefing was due on Tuesday, May 20, 2014. On May 20 and May 23, OIC Marianas filed supplemental briefs identifying responsive documents (#154, #155, #156). However, the documents concern cease-and-desist letters relating to Lyon, not OIC Marianas. These are unresponsive.

OIC Marianas' supplemental briefs also address its failure to produce the underwriting filing and various financial statements. The court is not inclined to review the fifty-one pages of OIC Marianas'

supplemental discovery documents. First, the court did not grant OIC Marianas leave to supplement the record with these documents. The purpose of the evidentiary hearing was to determine whether OIC Marianas had already complied with Judge Koppe's order; not whether it could comply at some point in the future. Second, the court granted OIC Marianas leave to supplement its response to Alutiiq's fourth request for production. This supplement was due May 20, 2014. Assuming OIC Marianas' underwriting filing and various financial statements are responsive to Alutiiq's fourth request for production, which they are not, OIC Marianas' filings are untimely.

Therefore, after reviewing the parties' legal arguments and conducting an evidentiary hearing, the court finds that OIC Marianas violated Judge Koppe's order for the reasons stated above.

## II.   <u>Whether Case-Dispositive Sanctions should be Imposed</u>

Having decided that OIC Marianas disregarded Judge Koppe's order, the court now turns to the second question: whether case-dispositive sanctions should be imposed. For the reasons discussed below, the court recommends granting Alutiiq's motion for case-dispositive sanctions. The court's analysis proceeds in four parts: (1) a review of the governing law; (2) a finding that OIC Marianas effectively failed to oppose Alutiiq's motion; (3) a finding that the *Hockey* factors militate in favor of entering default judgment against OIC Marianas; and (4) a finding that Rule 37 monetary sanctions are warranted. (#136, #137, #140, and #144).

### A.   *The Law of Case-Dispositive Discovery Sanctions*

At the pretrial stage, there are three sources of authority under which a district court can impose case-dispositive sanctions for discovery abuses: the inherent power of federal courts to levy sanctions in response to abusive litigation practices and the availability of sanctions under Federal Rules of Civil Procedure 16(f) and 37.

15

Rule 16(f) provides that "the court may issue any just order," including those authorized by Rule 37(b)(2)(A), in response to a party's failure to obey a pretrial order. FED. R. CIV. P. 16(f)(1)(C). If sanctions are awarded under Rule 16(f), "the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance," unless the noncompliance was substantially justified or other circumstance make an award of expenses unjust. FED. R. CIV. P. 16(f)(2).

Rule 37(b)(2)(A) provides for additional sanctions. It states: "[i]f a party . . . fails to obey an order to provide or permit discovery," the court may: (i) direct that the matters in the order or other designated facts be taken as established; (ii) prohibit the disobedient party from supporting or opposing designated claims or defenses; (iii) strike  pleadings; (iv) stay proceedings; (v) dismiss the action in whole or in part; (vi) render default judgment against the disobedient party; or (viii) treat the disobedient party's failure to obey the court order as contempt. FED. R. CIV. P. 37(b)(2)(A). Rule 16 sanctions exist "to encourage forceful judicial management." *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (emphasizing that a case management order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

When deciding whether to impose the "harsh penalty" of case-dispositive sanctions, courts in the Ninth Circuit apply a five-factor test. *See Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991) (per curiam) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 96 (1976) (per curiam). The district court must evaluate: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

16

District courts have discretion to impose the extreme sanction of dismissal if there has been "flagrant, bad faith disregard of discovery duties." *Wanderer v. Johnston*, 910 F.2d 652, 655–56 (9th Cir. 1990).

### B.    *OIC Marianas Failed to Oppose Alutiiq's Motion*

Alutiiq's motion should be granted because OIC Marianas effectively failed to oppose the motion. The issue before the court is whether the court should impose case-dispositive sanctions against OIC Marianas. However, OIC Marianas's opposition construes Alutiiq's motion for case-dispositive sanctions as a motion to compel. (*See generally* Def.'s Opp'n #134).

This was mistaken. There is no doubt that Alutiiq moved for case-dispositive sanctions. On May 17, 2013, Judge Koppe entered a minute order "remind[ing] Defendant that failure to comply" with the court's orders "may subject it and/or its counsel to sanctions under Federal Rule of Civil Procedure 16(f)." (Min. Order #95). On May 21, 2013, Alutiiq moved for case-dispositive sanctions because OIC Marianas failed to comply with Judge Koppe's order. (*See* Pl.'s Mot. for Sanctions #97). Because this motion was denied without prejudice, (*see* Mins. Proceedings #127), Alutiiq renewed the instant motion for sanctions following OIC Marianas's failure to cure its noncompliance with Judge Koppe's order. Nonetheless, OIC Marianas construed Alutiiq's motion as a motion to compel.

Local Rule 7-2(d) of the District of Nevada's Local Rules of Practice state that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." Here, OIC Marianas filed an opposition; but the opposition does not include any "points and authorities in response to" Alutiiq's motion. Alutiiq's motion and OIC Marianas' response address different topics and argue separate points of law. Accordingly, although OIC Marianas opposed Alutiiq's motion in form, it failed to oppose the motion substantively, as Local Rule 7-2(d) requires. Therefore, the court recommends granting Alutiiq's motion for case-dispositive sanctions pursuant to Local Rule 7-2(d).

17

### C.   *The* Hockey *Factors Militate in Favor of Entering Default Judgment*

This discovery dispute began in 2011. It is now 2014. As this dispute was pending, Judge Leen ordered case-dispositive sanctions against OIC Marianas' majority shareholder, Dennis Lyon, the court approved and revised at least three scheduling orders (#17, #52, #130) and OIC Marianas' legal counsel has repeatedly withdrawn because OIC Marianas refused to participate in litigation.

With this context in mind, the court turns to a discussion of the *Hockey* factors. As stated above, courts in the Ninth Circuit consider five factors before entering case-dispositive sanctions. These are: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Porter*, 941 F.2d at 733 (citing *Nat'l Hockey League*, 427 U.S. at 96). Case-dispositive sanctions are appropriate where four factors support them, or where at least three factors "strongly support" them. *See Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)). The court finds that four of these factors strongly support entering default judgment against OIC Marianas.

Where—as here—a court order is violated, the first two factors support sanctions, and the fourth factor cuts against entering default judgment. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411–12 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991) (stating that the district court properly considered all of defendant's misconduct during discovery when ordering default judgment). Here, OIC Marianas disregarded Judge Koppe's warning that case-dispositive sanctions may be imposed and violated her order. (*See* Mins. Proceeding #94); (Min. Order #95). Thus, the first two factors support entering default

18

against OIC Marianas.[6]

With respect to the third factor, there is no question that Alutiiq has been prejudiced by OIC Marianas' failure to comply with its discovery obligations. OIC Marianas has repeatedly failed to comply with the Federal Rules of Civil Procedure's self-executing rules and repeatedly disregarded the court's warnings regarding sanctions and orders compelling discovery. This is prejudicial. *See Sec. and Exch. Comm'n v. Seaboard Corp*., 666 F.2d 414, 417 (9th Cir. 1982) (stating that the failure to produce documents is sufficient grounds to find prejudice)); *Henry v. Gill Indus*., 983 F.2d 943, 948 (9th Cir. 1993) (noting a "defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case"). The Honorable Andrew P. Gordon, U.S. District Judge recognized that this prejudice was likely. On July 8, 2013, Judge Gordon cautiously denied Alutiiq's motion for default judgment against OIC Marianas and stated "that the delay of default judgment could result in some prejudice to Plaintiff, especially given Defendants' conduct in discovery." (July 8, 2013 Order (#113) at 5:20–21).

The fifth factor supports entering case-dispositive sanctions where the court has: (a) explicitly discussed the feasibility of less drastic sanctions, explaining why they are not feasible; (b) implemented alternative sanctions before ordering dismissal; and (c) warned the party of the possibility of dispositive sanctions before ordering them. *Malone v. United States Postal Ser'v*, 833 F.2d 128, 132 (9th Cir. 1987), *cert. denied sub nom Malone v. Frank*, 488 U.S. 819 (1988)). However, the Ninth Circuit has found it is "not always necessary for the court to impose less serious sanctions first, or to give any explicit warning." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir.

---

[6] The second factor—the court's need to manage its docket—strongly supports entering case-dispositive sanctions in light of the fact that OIC Marianas' delays have caused the court to repeatedly revise and rewrite its case management order. (*See* #17, #52, #130). The Ninth Circuit has emphasized that a case management order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610.

1998) (citation omitted) ("[O]ur test has not been what it appears to be, a mechanical means of determining what discovery sanction is just. The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof.").

Here, case-dispositive sanctions are warrented for four reasons. First, the court provided ample warnings of the possibility that case-dispositive sanctions may be issued. On May 17, 2013, Judge Koppe entered a minute order "remind[ing] Defendant that failure to comply" with the court's orders "may subject it and/or its counsel to sanctions under Federal Rule of Civil Procedure 16(f)." (Min. Order #95). On May 21, 2013, Alutiiq moved for case-dispositive sanctions for failure to comply with Judge Koppe's order; and on December 9, 2013, the court denied Alutiiq's motion without prejudice with leave to renew. (*See* Mins. Proceedings #127).

Second, the court has already imposed case-dispositive sanctions in the action against Dennis Lyon, who is OIC Marianas' majority shareholder. As discussed above, Judge Leen imposed case-dispositive sanctions against Lyon in response to the same discovery abuses that Lyon is repeating here through his corporate entity, OIC Marianas.

Third, the court has repeatedly delayed entering case-dispositive sanctions and default judgment against OIC Marianas in the hope that it would comply with its discovery obligations. OIC Marianas repeatedly failed to comply. It disregarded Judge Koppe's order, represented that no supplemental documents exist, or if they do, they were produced, and then produced additionally—and allegedly deficient—discovery on January 17, 2014, months after the May 28, 2013 deadline set by Judge Koppe's order. (*See* #92, #136). These action and representations do not indicate that OIC Marianas is participating in litigation. On the contrary, they demonstrate that the company is at least negligently preventing the court from securing "the just, speedy, and inexpensive determination" of this action. *See*

FED. R. CIV. P. 1. Accordingly, the court finds that the fifth factor strongly supports the imposition of case-dispositive sanctions.

Fourth, less drastic sanctions are unavailable. This dispute has been pending since 2011. It is now 2014. Judge Koppe ordered OIC Marianas to comply with this discovery obligation by May 28, 2013. It did not. Because Judge Koppe recused herself, OIC Marianas had until May 2014 to comply with her order. OIC Marianas still refused to comply.

Case-dispositive sanctions are appropriate where four factors support them, or where at least three factors "strongly support" them. *See Yourish*, 191 F.3d at 990 (citation omitted). For the reasons stated above, four of the factors strongly support the imposition of case-dispositive sanctions. As a result, the court recommends striking OIC Marianas' answer and entering default judgment against OIC Marianas.

### D.    *Alutiiq's Request for Monetary Sanctions should be Granted*

The court also finds that Alutiiq's request for monetary sanctions should be granted. Federal Rule of Civil Procedure 37 governs a party's failure to cooperate in discovery. Rule 37(a)(5)(A) states:

> If the motion is granted—of if the disclosure of requested discovery is provided after the motion was filed—the court **must**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A) (emphasis added). Rule 37(a)'s Advisory Committee Notes emphasize that "expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying this point to court." *Id*. Advisory Comm. Notes, 1970 Amend. This provision "presses the court to address itself to abusive [discovery] practices." *Id*.

An award of expenses is inappropriate if: (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's non-disclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust. FED. R. CIV. P. 37(a)(5)(A)(i–iii), 37(a)(5)(B). The burden is on the losing party to affirmatively demonstrate that its discovery conduct was substantially justified. FED. R. CIV. P.  37(a), Advisory Comm. Notes, 1970 Amend. Discovery conduct is "substantially justified if it is a response to a 'genuine dispute or if reasonable people could differ as to the appropriateness of the contested action.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Alutiiq's motion is meritorious. As discussed above, OIC Marianas repeatedly disregarded Judge Koppe's order and produced discovery, on multiple occasions, only after the court held a hearing or Alutiiq filed additional motions to compel and motions for sanctions. This is the precise type of conduct that Rule 37 was designed to curb. *See* FED. R. CIV. P. 37, Advisory Comm. Notes, 1970 Amends. ("The proposed change provides in effect that expenses should ordinarily be awarded. . . .").

Alutiiq moves for $10,000 in sanctions to offset OIC Marianas' discovery abuses. (*See* Mins. Proceedings (#153)) (citing Pl.'s Mot. for Sanctions (#97) at 9). Given this action's procedural history, an award of $10,000 may be reasonable. However, Alutiiq did not file an affidavit, invoice, or other evidence relating to its costs that would permit the court to conclude that an award of $10,000 is warranted.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

ACCORDINGLY, and for good cause shown,

## RECOMMENDATION

IT IS RECOMMENDED that Alutiiq's supplemental motion for discovery sanctions (#129) be GRANTED.

IT IS FURTHER RECOMMENDED that OIC Marianas' answer be STRICKEN and DEFAULT JUDGMENT be entered against it.

## ORDER

IT IS ORDERED that the parties' ancillary motions (#136, #137, #140, and #152) are DENIED AS MOOT.

IT IS FURTHER ORDERED that OIC Marianas is SANCTIONED pursuant to Federal Rule of Civil Procedure 37.

IT IS FURTHER ORDERED that that Alutiiq file POINTS AND AUTHORITIES with an AFFIDAVIT and support documents detailing the fees and costs incurred while litigating OIC Marianas' discovery abuses by June 16, 2014. OIC Marianas' opposition as to the appropriate amount of the sanction is due by June 30, 2014. Replies will not be considered.

IT IS SO ORDERED.

DATED this 2nd day of June, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE