1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ALUTIIQ INTERNATIONAL SOLUTIONS, LLC,

                Plaintiff,

vs.

OIC MARIANAS INSURANCE CORPORATION,

                Defendant.

Case No.: 2:10-cv-01189-JAD-VCF

Consolidated with:
Case No.: 2:11-cv-01104-JAD-VCF

**Order
(##129, 160, 171, 176)**

**Introduction**

Four years of well-documented delays and discovery abuses by defendant OIC Marianas Insurance Corporation and its principal Dennis Lyon have culminated in plaintiff Alutiiq International Solutions, LLC's instant motion to strike the surety's answer and enter a default against it as the sanction for this litigation misconduct.[1]  In a 23-page report and recommendation,[2] Magistrate Judge Cam Ferenbach concluded that "OIC Marianas repeatedly disregarded [Magistrate] Judge Koppe's" discovery order and "on multiple occasions" responded to discovery "only after the court held a hearing or Alutiiq filed additional motions to compel and motions for sanctions"—"the precise type of conduct that Rule 37 was designed to curb"[3]—and he recommends I grant the motion.

Months after OIC's objections to the R&R were fully briefed, in a last-ditch effort to stave off case-dispositive sanctions, OIC obtained new lawyers—its fourth set—who filed a vaguely

---

[1] Doc. 129.  All "Doc." references denote filings in 2:10-cv-1189-JAD-VCF unless otherwise noted.

[2] Doc. 160.

[3] *Id*. at 22.

titled emergency motion for relief.[4]  The motion blames the discovery violations entirely on now-terminated counsel and asks the court not to impute these failures to the client, OIC.

Having thoughtfully considered de novo Magistrate Judge Ferenbach's findings and recommendation[5] and the parties' extensive briefing on these issues, I adopt the magistrate judge's findings and accept his recommendation, overrule OIC's objections, grant the motion to strike OIC's answer and enter default against it,[6] and deny OIC's Emergency Motion for Relief[7] for the reasons below.

**Background**

This litigation over a performance bond issued by OIC Marianas to guaranty NCC Electrical Service's construction work on the OJO Encino Day School in New Mexico spans three lawsuits, two of which are consolidated here.[8]  In these consolidated matters, the project's prime contractor Alutiiq alleges that OIC (headquartered in Saipan) and its majority shareholder Dennis Lyon engaged in a scheme to defraud surety bond holders and owes Alutiiq more than $1.5 million for the work Alutiiq had to replace after NCC failed to perform.[9]

As Magistrate Judge Ferenbach accurately recounts, the litigation has been "straining," Lyon and OIC have repeatedly refused to comply with the court's discovery orders, and the docket in both cases is peppered with Alutiiq's motions to compel and escalating requests for sanctions.[10]  In case 2:11-cv-01104, Lyon's answer was stricken and default was entered against him shortly

---

[4] Doc. 176.

[5] Doc. 160.

[6] Doc. 129.

[7] Doc. 176.

[8] Case Nos.: 2:10-cv-1189-JAD-VCF; 2:11-cv-1104-JAD-VCF.  A third case was filed in the District of New Mexico.

[9] Doc. 7 at 23; Doc. 1 at 3-9 in 2:11-cv-1104.

[10] *See* Doc. 160 at 3-5; Docs. 53, 60, 97.  I adopt and incorporate herein Magistrate Judge Ferenbach's characterization of the proceedings in Doc. 160 at 2-9.

before the case was consolidated into this one after Magistrate Judge Leen found—and District Judge Navarro agreed—that Lyon had not satisfied his discovery obligations "[d]espite repeated warnings and Orders from the court" and having been "urged to comply, warned and threatened with case-dispositive sanctions."[11]

The first order compelling discovery in the instant case was entered by Magistrate Judge Nancy Koppe on May 13, 2013. It directed OIC to provide proper responses to various written-discovery requests including requests for production (RFPs) 11 and 12 and interrogatory request 5 and to "submit a detailed explanation of the search it conducted to find responsive documents in its possession, custody and control in responding to the Request for Production of Documents Numbers 11, 12, and 13."[12] Judge Koppe deferred consideration of Alutiiq's request for sanctions for further briefing.[13] When the case was reassigned to Magistrate Judge Ferenbach, he heard and denied Alutiiq's sanctions request and ordered the parties to meet and confer regarding the discovery that Magistrate Judge Koppe ordered.[14] On December 16, 2013, Alutiiq renewed its motion to compel and for sanctions[15] arguing that, despite having served its first discovery requests nearly three years earlier, it still does not have full and adequate discovery responses that go to the heart of the parties' dispute and that striking OIC's answer and entering default against it so that the matter can proceed to the damages phase is the only way to level the playing field.[16]

Magistrate Judge Ferenbach conducted an evidentiary hearing to consider the two issues raised in Alutiiq's latest discovery-sanctions motion: (1) whether OIC complied with Magistrate Judge Koppe's order by providing proper responses to Alutiiq's written discovery requests, and

---

[11] Docs. 90, 98, and 102 in 2:11-cv-01104.

[12] Doc. 94 (minutes).

[13] *Id*.

[14] Docs. 127 (minutes), 130 (minutes).

[15] Doc. 129

[16] *Id*. at 9-10.

(2) if not, whether case-dispositive sanctions should be imposed.[17]  In his 23-page report and recommendation, Magistrate Judge Ferenbach concluded that OIC did not satisfy its obligations under Magistrate Judge Koppe's order because its responses remain deficient; he recommends that I impose case-dispositive sanctions both under Local Rule 7-2(d) because OIC Marianas did not oppose the motion for sanctions and because, on balance, the relevant factors "strongly support" them; and he further ordered that OIC "is SANCTIONED pursuant to Federal Rule of Civil Procedure 37" and directed each of the parties to file a supplemental brief regarding "the appropriate amount of the sanction."[18]

OIC objects to the report and recommendation,[19] filed an emergency motion for leave to file a reply in support of its objection,[20] and responded to Alutiiq's supplemental brief regarding the amount of attorneys fees it seeks under Rule 37.[21]  Months later, OIC changed counsel a third time, and its new lawyers filed an "emergency motion" that seeks to replace all of OIC's previous briefing about the pending sanctions motion with a new theory: the discovery violations were the fault of legal malpractice by OIC's third counsel's law firm and should not be imputed to this innocent client.[22]  I first consider Alutiiq's sanctions motion and OIC's objections to the R&R, followed by the emergency motions.

---

[17] Doc. 160 at 9; 170-1 at 10 (hearing transcript).

[18] Doc. 160 at 23.  I base my acceptance and adoption of the R&R on a merits determination, not on LR 7-2(d).  Because I find the merits of the motion a stand-alone basis for granting the motion for sanctions, I do not address whether OIC's failure to oppose the motion provides an additional basis for granting it.

[19] Doc. 167.

[20] Doc. 171.

[21] Doc. 169.

[22] Doc. 176.

**Discussion**

When a party files specific written objections to a United States magistrate judge's findings and recommendations,[23] the district court must make a de novo determination of those portions of the report to which objections are made.[24]  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[25]  Having now completed a de novo review of this matter, I agree with Magistrate Judge Ferenbach that OIC violated Magistrate Judge Koppe's order and this is one of those rare cases of protracted discovery abuses and delays in which case-dispositive sanctions are warranted.  I base these conclusions on the following findings:

**A.     Judge Koppe Warned OIC that Case-Dispositive Sanctions May Issue.**

At the beginning of Magistrate Judge Koppe's May 13, 2013, hearing, OIC's then-counsel acknowledged that the company's interrogatory and request-for-production responses were inadequate:

> . . . . Your Honor, before we continue any further, we've just been retained recently. So we've been having to deal with the Motion for Default judgments and we – we've been very occupied with that motion. And so we've been trying to -- well, we -- we hit the road running pretty fast.  So we haven't had adequate time to go over every single detail of the interrogatories and whatnot.  But what we can -- what we can represent to the Court is that we agree with opposing counsel that some interrogatories were not adequately addressed and some were adequately addressed. And if the Court would allow us 15 days to address them individually, we would *adequately respond to every interrogatory and -- and request for production.*[26]

And when issuing her ruling, Magistrate Judge Koppe emphasized to OIC—not just to counsel—that case-dispositive sanctions would issue for continued discovery violations.  She explained, "to be clear, failure to provide any supplemental discovery that's ordered at this hearing—I want your client to be very aware that failure to provide that supplemental discovery

---

[23] 28 U.S.C. § 636(b); D. Nev R. IB 3-2.

[24] *Id*.

[25] *Id*.

[26] Doc. 147 at 6-7 (emphasis added).

1   could subject your client to severe sanctions, including case dispositive sanctions."[27]

2   **B.   OIC Did Not Fully Respond to RFP 11.**

3       Alutiiq's RFP 11 asked OIC to "Produce any and all documents that support, evidence, or

4   corroborate your answer to [Interrogatory 4],"[28] which asked the company to "Describe in full

5   detail why [it] elected to utilize Standard Form 25 for the Payment Bond and Performance Bond,

6   including but not limited to whether the use of Standard From 25 was intentional or accidental."[29]

7   OIC initially responded to Interrogatory 4 by stating that "Former Officer of OIC Marianas

8   Insurance Corporation Mike Katsuren made the decision to utilize Standard Form 25 for the

9   Payment Bond and Performance Bond.  Mr. Katsuren did not discuss the selection of Bond to any

10  persons related to [OIC]."[30]  OIC's response also indicated that its Board of Directors had

11  attempted and failed to locate Katsuren.[31]

12      But in response to RFP 11, OIC asserted a completely different basis for refusing to

13  provide responsive documents: this request "calls for an improper disclosure of Defendant's

14  counsel's mental sense impressions" of what documents support the decision to utilize Standard

15  From 25,"[32] which is protected by the work-product doctrine.  Alutiiq countered that OIC decided

16  what bonds to issue long before Alutiiq contemplated litigation and, thus, the work-product

17  doctrine is inapplicable.[33]  In granting Alutiiq's motion to compel a response to this request,

18  Magistrate Judge Koppe ordered:

19

20  _____

21      [27] *Id*. at 7-8.

22      [28] Doc. 53-2 at 34.

23      [29] *Id*. at 33.

24      [30] Doc. 53-2 at 33-34.  Alutiiq has not moved to compel on the basis of OIC's response to
25  Interrogatory 4.

26      [31] *Id*. at 34.

27      [32] *Id*.

28      [33] Doc. 53.

that documents in the possession, custody and control of OIC Marianas must be produced in response to this request for production.  Further, OIC . . . in responding to this request for production . . . must provide a detailed explanation of the search it conducted to find responsive documents in its possession and it must provide that detailed explanation to plaintiff's counsel along with its supplemental response to this request for production.[34]

Both the responsive documents and the detailed explanation of the search for those documents were due to Alutiiq by May 28, 2013.[35]  In its supplemental response to RFP 11, OIC states only that "[o]ther than the bond itself, which has already been produced, defendant has no additional documents."[36]  Notably missing from this response is the detailed explanation of the search for responsive documents that Magistrate Judge Koppe specifically ordered OIC to provide with its supplemental response to this request.

During the evidentiary hearing before Magistrate Judge Ferenbach on Alutiiq's renewed motion for sanctions,[37] Alutiiq argued that, given the amount of the bond and the attendant risk that came with issuing it, it is hard to believe that OIC had absolutely no documents—such as an intake form—indicating why it issued the bond on Standard Form 25 as opposed to an alternative form.[38]  Magistrate Judge Ferenbach concluded that OIC should have produced the underwriting file, which presumably would have included appropriately responsive documents.[39]  When he asked OIC's counsel whether there was an underwriting file, counsel represented that there is, and that OIC produced it.[40]  But he could not identify where in OIC's document dump with a "700-

---

[34] Doc. 147 at 11.

[35] Doc. 94 (minutes).

[36] Doc. 129-2 at 5.

[37] Doc. 129.

[38] Doc. 166 at 13-14.

[39] *See id.* at 18-19, 30-31.

[40] *Id.* at 19.

page index of documents" one might locate it.[41]  OIC's counsel then put OIC representative

Melissa San Martin (the person listed on the bond as having power of attorney, and the assistant

with funds control) on the stand to assist the court in navigating the index, but even she could not

identify where in the 700-page index the responsive documents might be found, and she suggested

that she would need as much as two hours to try to find them.[42]  Magistrate Judge Ferenbach

found this testimony militated strongly in favor of finding that OIC disregarded Magistrate Judge

Koppe's order because it should have produced the underwriting file in the manner it had been

maintained in the ordinary course of OIC's business in response to RFP 11, and that simply did

not occur.[43]

     OIC objects to Magistrate Judge Ferenbach's finding that OIC should have produced the

underwriting file both because Judge Ferenbach did not give Ms. San Martin the time to look

through the 700-page index and identify its location, and because the evidentiary hearing was the

first time OIC was asked to produce the file.[44]  But this ignores the obvious: it was OIC's

responsibility to produce all documents responsive to RFP 11, and if those documents were

contained in the underwriting file, then it matters little whether Alutiiq specifically requested the

"underwriting file" because Magistrate Judge Koppe unambiguously ordered OIC to produce all

documents responsive to RFP 11 by May 28, 2013.  Plus, OIC blatantly failed to include a

detailed description of the steps it took in its search for documents, which constitutes a second

violation of the order.  Accordingly, this evidentiary record supports Magistrate Judge

Ferenbach's conclusion that OIC violated Magistrate Judge Koppe's order with respect to RFP 11.

**C.     OIC's Responses to Interrogatory 5 and RFP 12 Are Also Deficient.**

     Interrogatory 5 directed OIC: "To the extent that you contend that Alutiiq is not the

obligee under the Performance Bond, describe in full detail all facts upon which you base your

---

[41] *Id*. at 14-19.

[42] *Id*. at 25-26.

[43] Doc. 160 at 14.

[44] Doc. 167 at 18-20.

contention."[45]  OIC's initial response on September 7, 2012, was:

> To the extent that [OIC] is not obligated to Alutiiq under the Performance Bond to the extent that the Bond issues, Standard Form 25 . . . states 'We, the Principle [sic] and the Surety(ies), are firmly bound to the United States of America, (hereinafter called the Government) in the above penal sum.[']  In further support that the Government is the obligee, please *see* "The Miller Act", 40 U.S.C.  3131, subsections (a)(b) and (c), 48 C.F.R. 106-3(b)(2009 vol. 1 pp. 577-578) and 48 C.F.R. 28.102-2(b)(1)(2009 vol. 1 p. 575).  To that extent, the obligee under the Bond is the Government.[46]

With RFP 12, Alutiiq sought all documents that supported OIC's answer to this interrogatory request.[47]  Like it did with RFP 11, OIC responded with a work-product-doctrine objection.[48]  Alutiiq pointed out that OIC decided what bonds to issue long before Alutiiq contemplated litigation, and thus the work product doctrine offers no shield.[49]

In the hearing before Magistrate Judge Koppe, counsel for OIC stated as to interrogatory 5, "we could supplement that one []."[50]  But when it came to RFP 12, OIC's then-counsel took the position that Alutiiq "received all the documents that—that we had.  So I have nothing further than that."[51]  Magistrate Judge Koppe granted the motion to compel.  She directed OIC to provide a clearer response to Interrogatory 5,[52] found that the work product doctrine did not shield OIC from a substantive response to RFP 12, and ordered OIC to produce responsive documents along with a detailed explanation of the search it completed in order to find responsive documents in its

---

[45] Doc. 53-2 at 34.

[46] *Id*. at 34-35.

[47] *Id*. at 35.

[48] *Id*. at 35.

[49] *See* Doc. 53.

[50] Doc. 147 at 12.

[51] *Id*. at 14.

[52] *Id*. at 12-14.

possession, custody, or control by May 28, 2013.[53]

In its supplemental response to interrogatory 5, OIC stated:

> The bond that was issued states on its face that the obligation is to the United States of America.   Specifically, the Bond contains the following language, "We, the Principal and Surety, are firmly bound to the United States of America, hereinafter called the Government, in the above penal sum."   The bond contains no language to the contrary.   Alutiiq is a major player in the construction injury and was well aware of the purpose and intent of this bond.   If it wanted to be named as obligee, it could have demanded a bond be issued where it was the obligee.   The bond was accepted by Alutiiq to satisfy the bonding requirements imposed on it by the United States of America.[54]

OIC's supplemental response to RFP 12 represents that OIC "previously produced the bond at issue in this litigation.   That is the only document [OIC] is aware of which supports defendant's position."[55]   Thus, OIC once again ignored Magistrate Judge Koppe's instruction to provide a detailed explanation of its search for responsive documents.

Magistrate Judge Ferenbach found that OIC's "answer ignores the facts that OIC Marianas issued a second bond [naming] Alutiiq as the oblige[e], and that Judge Koppe ordered OIC Marianas to identify facts in support of its position that the second bond does not identify Alutiiq as the obligee."[56]   I agree that Magistrate Judge Koppe called upon OIC to produce a response to Interrogatory 5 that clarified OIC's position that the United States—rather than Alutiiq—was the obligee under the bond in light on the Consent of Surety agreement: "Regarding Interrogatory Number 5, the Court grants the Motion to Compel.   OIC Marianas must provide a clearer response to that interrogatory and *must provide any additional facts that exist in response to that interrogatory*."[57]   And OIC again ignored Magistrate Judge Koppe's order that OIC provide a detailed explanation of the search it conducted to find documents responsive to this production request by May 28, 2013.   Accordingly, OIC also violated Magistrate Judge Koppe's order with

---

[53] *Id*.; *see also* Doc. 94 (minutes).

[54] Doc. 129-2 at 3-4.

[55] *Id*. at 5.

[56] Doc. 160 at 13.

[57] Doc. 147 at 12-13 (emphasis added).

respect to Interrogatory 5 and RFP 12.

**D.     OIC's Objections to the R&R Lack Merit.**

Having concluded that the record supports Magistrate Judge Ferenbach's finding that OIC

violated Magistrate Judge Koppe's discovery order, I now turn to OIC's objections, which can

generally be distilled to the following themes: (1) OIC's responses were complete and satisfied

Magistrate Judge Koppe's order because there was nothing left to produce; (2) OIC's

supplemental responses only demonstrated its willingness to keep giving plaintiff documents

beyond the scope of its requests; (3) Magistrate Judge Koppe did not order OIC to produce more

documents in response to the requests; she expanded the scope of the requests; and (4) the case-

dispositive sanctions Magistrate Judge Ferenbach recommends would violate due process.

> ***1.      Objections 1, 2, 3, 6 & 12: OIC's responses were complete and satisfied Judge Koppe's order because there was nothing left to produce.***[58]

The bulk of OIC's objections center on its claim that it fully complied with Magistrate

Judge Koppe's order because it simply had nothing left to produce.  Alutiiq made a persuasive

case that additional documents must exist, however.  During the evidentiary hearing before

Magistrate Judge Ferenbach on Alutiiq's renewed motion for sanctions,[59] Alutiiq's counsel

articulated the crux of the deficiencies.  He explained that OIC disputes whether Alutiiq was the

obligee, and that an amendment—which increased the amount of the bond—should have cleared

up any dispute.  But no documents relating to OIC's decision on what bond to issue have been

produced,[60] and it is hard to believe that OIC had absolutely no paperwork—such as an intake

form or the underwriting file—indicating why it issued the bond on Standard Form 25 instead of

---

[58] Doc. 167 at 1-3.

[59] Docs. 129, 166.

[60] Doc. 166 at 13-14. OIC's ninth objection is that "Defendant cannot make up facts to support its contention, addressed in its motion to dismiss (#8, order #23) that a Bond made payable to the US makes the US the obligee.  Plaintiff does not contend that the obligee on the additions to the Bond was the US." Doc. 167 at 2.  This is not as much an objection to Magistrate Judge Ferenbach's ruling as it is a statement of the law.  I overrule it because it is not an objection.

another available form.[61]  Magistrate Judge Ferenbach noted that he would "not relitigate the fundamental assumption underlying Magistrate Judge Koppe's prior order: that responsive documents do, in the fact, exist."[62]  And OIC gave neither magistrate judge a reason to reconsider that assumption.

OIC's objection that "Defendant produced the underwriting file in business order"[63] is not supported by the evidence adduced at Judge Ferenbach's evidentiary hearing.  He heard testimony from Melissa San Martin, who held OIC's power of attorney on the subject bond.[64]  San Martin inspected OIC's production, and she was unable to identify where in that production the underwriting file had been produced.[65]  Based on this testimony, Magistrate Judge Ferenbach concluded that the underwriting file had not been produced to Alutiiq in the manner kept in OIC's ordinary course of business.[66]  Nothing in OIC's objections persuades me otherwise.

Even if there had been no documents left to produce in May 2013, OIC still did not comply with Magistrate Judge Koppe's order.  The order directed OIC to provide a detailed description of its search efforts for additional documents by May 28, 2013.[67]  But OIC ignored this requirement altogether.  OIC's objection that "The Magistrate ignored the extensive efforts of OICM to look for documents, even when it didn't think they existed"[68] is beside the point.  OIC had a court-ordered obligation to describe, in detail, those allegedly "extensive efforts" in May 2013 and failed or refused to do so, belying its after-the-fact argument that it engaged in extensive

---

[61] Doc. 166 at 13-14; Doc. 147 at 10-11.

[62] Doc. 160 at 11.  Magistrate Judge Ferenbach also noted that no leave had been given to OIC to supplement the record.  Doc. 160 at 15.

[63] Doc. 167 at 2.

[64] Doc. 166 at 22-23.

[65] *Id.* at 25-26, 29-30.

[66] *Id.* at 30-31.

[67] Doc. 94 (minutes).

[68] Doc. 167 at 2.

document-search efforts.

Objections 1, 2, 3, 6, and 12 are overruled.

### 2.    *Objections 4, 5 & 7:  OIC's supplemental responses only demonstrated its willingness to keep giving plaintiff documents beyond the scope of its requests*.[69]

I am also unmoved by OIC's assertion that its supplemental production in January 2014—nearly nine months after the May 2013 court-ordered deadline—is consistent with its argument that it had produced everything.  OIC's production of documents on January 17, 2014, with the explanation that the holiday season and Alutiiq's refusal to participate in discovery were the reasons for the delay, belies its claim that it had nothing left to produce.[70]  As Magistrate Judge Ferenbach observed, this supplemental production could—and should—have been provided by OIC by the original May 28, 2013, deadline.  OIC's responses were, therefore, not complete.  I am not persuaded by OIC's argument that its supplemental responses demonstrate its "complete willingness . . . to give [Alutiiq] whatever it wanted regardless of whether it was called for by the written discovery or not, recognizing [OIC] was viewed by the [c]ourt as having not cooperated with discovery."[71]  Rather, they demonstrate sandbagging.

To the extent that OIC now blames its own discovery failures on Alutiiq's failure to respond to OIC's discovery requests and calls on the equitable doctrine of unclean hands, this argument is too little, too late and based on little more than uninformed speculation by OIC's fourth set of attorneys.[72]  Although OIC filed a motion to compel,[73] it do so just days before Magistrate Judge Ferenbach issued this recommendation and denied the motion as moot.[74]  Had Alutiiq's conduct truly been the impediment to OIC's compliance, it should have filed its motion

---

[69] *Id.* at 1-3.

[70] *Id.*

[71] Doc. 167 at 2.

[72] Doc. 176 at 25-26.

[73] Doc. 152.

[74] Doc. 160 at 23.

1  to compel much earlier than three days before the magistrate judge's hearing.

2        Objections 4, 5, and 7 are overruled.

3

4      ***3.    Objections 8, 10 & 11:  Judge Koppe did not order OIC to produce more documents in response to the requests; she expanded the scope of the requests.***[75]

5        OIC's next set of objections takes an historical-revisionist approach to Magistrate Judge

6  Koppe's order.  In its eighth objection, OIC argues that "Judge Koppe's order did not find there

7  were additional documents not already produced by other parties to the litigation or even find that

8  there were additional documents to be produced, rather it held that the 'you' in a request to

9  produce to OICM included Joe Lyon and that 'in New Mexico' included Indian reservations

10  located within the geographic boundaries of New Mexico."[76]  This tortured semantic argument is

11  not supportable by a plain reading of the order or its backstory.[77]

12        OIC's tenth objection is that "Magistrate Koppe's order with respect to Request 10

13  directed only that the Defendant produce copies of Bonds (there was only 1, the one which is the

14  subject of this lawsuit and attached to the complaint) issued within the borders of the State of New

15  Mexico, without excluding the Indian reservation from the meaning of the Request to Produce.

16  Defendant did that in its supplement."[78]  This is simply wrong.  Interrogatory No. 3 requested

17  identification of all "construction projects" located within the borders of New Mexico, and

18  Request for Production No. 10 requested "all documents that support, evidence, or corroborate

19  your Answer to [Interrogatory 3], including all bonds, contracts, or other agreements entered into

20  [by] you in Nevada and New Mexico within the past 5 years."[79]  OIC responded to RFP No. 10 by

21  stating that it "has already produced all documents it has pertaining to the bond which is the

---

[75] Doc. 167 at 1-3.

[76] Doc. 167 at 2.

[77] *See* Docs. 101-1 at 2-4; 147 at 14.

[78] Doc. 167 at 2.

[79] Doc. 101-1 at 1-4.

subject of this litigation."[80]  OIC did not state in that response whether this production had been made by OIC or by Lyon.

In its eleventh objection, OIC argues that "Magistrate Koppe's order, with respect to Request 11 directed only that the 'you' in a request for Cease and Desist orders applied to Joe Lyon.  It did not apply to Defendant OICM.  There never were any cease and desist orders issued to OICM, and it was Joe Lyon who agreed to contact the various states where cease and desist orders might exist against him and ask for copies.  He did that the information [sic] was supplied as orders."[81]  It is difficult for me to ascertain the factual basis for this objection.  Request for Production No. 11 requested documents relevant to Interrogatory No. 4, which states, "Describe in detail why you elected to utilize Standard Form 23 for the Payment Bond and Performance Bond . . . ."  This discovery request was propounded on OIC, which is plainly the "you" referenced in the request.  The interrogatory does not mention cease and desist orders.  I will not rummage through the discovery requests in this case to determine what discovery request OIC might actually mean to refer to; but even assuming *arguendo* that OIC intended to refer to this particular request for production, the "you" referred to in the request for production, as clarified in the May 13, 2013, order, could not have included Lyon.  Magistrate Judge Koppe explicitly rejected the argument that documents already produced by another party absolved OIC of its own production obligation: she ordered that "all documents responsive to this request in the possession, custody, and control of OIC Marianas must be produced, *again*, by May 28th, 2013."[82]  It is simply impossible for OIC to have interpreted Magistrate Judge Koppe's order to permit it to rest on the discovery responses of others.

Objections 8, 10, and 11 are overruled.

### 4.    *Case-dispositive sanctions are warranted.*

OIC's thirteenth objection is that "The Order and Report & Recommendations fails to

---

[80] *Id.* at 4.

[81] Doc. 167 at 2.

[82] Doc. 147 at 14 (emphasis added).

1    comply with the due process requirements of the United States Constitution as enunciated in

2    *Hammond Packing*[,] which holds that a sanction must be related to the claim to which the

3    discovery sought applies."[83]   Although *Hammond Packing* no longer supplies the controlling

4    standard, I conclude that Magistrate Judge Ferenbach's recommendation complies with it—and

5    the current standard—and I overrule this final objection.

6              **a.       The relevance of *Hammond Packing*.**

7              I begin with OIC's contention that Magistrate Judge Ferenbach's recommendation for

8    case-dispositive sanctions runs afoul of the Supreme Court's decision in *Hammond Packing v.*

9    *State of Arkansas* and denies OIC due process.  A 1909 decision last cited by the Ninth Circuit in

10   1948,[84] *Hammond Packing* stands for the proposition that due process is not violated when "the

11   refusal to produce evidence material to the administration of due process was an admission of the

12   want of merit in the asserted defense."[85]  This due-process criteria is now subsumed in the

13   "prejudice" factor in the Ninth Circuit's five-factor test.  OIC contends that its failure to comply

14   with Magistrate Judge Koppe's order cannot be used to impose sanctions because OIC's non-

15   compliance was unrelated to the merits of the case.  As both magistrate judges who evaluated

16   OIC's discovery conduct concluded, and I agree, these discovery violations are directly related to

17   the claims at issue; imposing case-dispositive sanctions for violating a court order to produce

18   information relating to those claims does not violate due process.

19

20              **b.       Ninth Circuit authority supports the recommended case-dispositive
                           sanctions.**

21             For the sake of completeness, I expand my consideration of the propriety of case-

22   dispositive sanctions from OIC's *Hammond Packing* argument to the Ninth Circuit's current five-

23   factor test, which Magistrate Judge Ferenbach analyzed and properly applied in his

24

25   _____

26   [83] Doc. 167 at 2-3.

27   [84] *Hammond Packing v. State of Arkansas*, 212 U.S. 322 (1909).

28   [85] *Id.* at 350-51.

recommendation.[86]  When considering sanctions under Rule 37, "A court must consider the

following five factors before striking a pleading or declaring default: '(1) the public's interest in

expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of

prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits;

and (5) the availability of less drastic sanctions.'"[87]  "[T]he key factors are prejudice and

availability of lesser sanctions."[88]  In particular, the Ninth Circuit has found that the element of

prejudice is essential, and "sanctions [that] interfere with the litigants' claim or defenses violate

due process when they are imposed 'merely for punishment of an infraction that did not threaten

to interfere with the rightful decision of the case.'"[89]  For the drastic sanction of dismissal to be

proper, the malfeasance must be due to "willfulness, fault or bad faith."[90]  "[D]isobedient conduct

[within] the control of the litigant is all that is required to demonstrate willfulness, bad faith or

fault."[91]

   Magistrate Judge Ferenbach found that the first two factors favor sanctions because OIC

failed to follow Magistrate Judge Koppe's orders, causing significant delay and requiring the court

to repeatedly revise and rewrite its case management orders.[92]  Magistrate Judge Ferenbach found

that the third factor favors case-dispositive sanctions because OIC's repeated delays and failures

to comply with its discovery obligations prejudiced Alutiiq[93] and obligated Alutiiq to file repeated

motions to compel and requests for discovery sanctions.  Finally, the magistrate judge found that

---

[86] Doc. 160 at 16.

[87] *Hester v. Vision Airlines*, 687 F.3d 1162, 1169 (9th Cir. 2012) (quotation omitted).

[88] *Id*.

[89] *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

[90] *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (internal quotations and citations omitted); *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003).

[91] *Henry v. Gill Inds.*, 983 F.2d 943, 948 (9th Cir. 1993) (internal quotations omitted).

[92] Doc. 160 at 18-19 & n.6.

[93] *Id*. at 19.

1  the fifth factor favors case-dispositive sanctions because less drastic sanctions available to the

2  court, including repeated explicit warnings that case-dispositive sanctions could follow if OIC

3  failed to comply with the court's orders, had zero effect on OIC's responsiveness to requests for

4  discovery.[94]

5       I agree with Magistrate Judge Ferenbach that OIC has demonstrated an unwillingness to

6  participate meaningfully in discovery, even after Magistrate Judge Koppe explicitly warned of

7  case-dispositive sanctions.  OIC has consistently offered more excuses than answers, a strategy

8  facilitated by its revolving door of legal representation.  OIC's inability to distill and comply with

9  the court's instructions is also amply demonstrated by its objections to Magistrate Judge

10  Ferenbach's report and recommendation—which are extraordinary for their outright

11  mischaracterization of the proceedings before Magistrate Judges Koppe and Ferenbach.  Indeed,

12  OIC claimed on two occasions to have produced all responsive documents, yet reversed course on

13  January 17, 2014, and "produced supplemental discovery responses, as ordered by Judge Koppe."

14  Continuing to allow OIC to participate in discovery will cause significant prejudice to Alutiiq

15  because the subject of the disputed discovery goes to the heart of this case, given that OIC has

16  been provided ample opportunity to comply with its discovery obligations but chose instead an

17  active pattern of evasion and mischaracterization.  By its conduct, OIC has amply demonstrated

18  that no sanction short of the case-dispositive sanctions Magistrate Judge Ferenbach recommends

19  will result in its compliance with its discovery and court-ordered obligations.

20       Even assuming *arguendo* that Magistrate Judge Ferenbach somehow lacked authority to

21  enter case-dispositive sanctions under the federal rules, this is one of the rare cases in which these

22  sanctions are warranted under the court's inherent powers.  In addition to its power to sanction

23  litigants for violation of enumerated discovery rules, the court retains the power to sanction

24  litigants under its inherent power to manage its docket "so as to achieve the orderly and

25

26

27

28      [94] *Id*. at 19-20.

1  expeditious disposition of cases."[95]  "Because of their very potency, inherent powers must be

2  exercised with restraint and discretion."[96]  OIC's continuous evasion of its discovery obligations,

3  and its patent disregard for its duty of candor of the court, have played a major role in delaying

4  this litigation and have confounded the "orderly and expeditious disposition" of this action.[97]

5         In sum, I agree with and fully adopt Magistrate Judge Ferenbach's findings and

6  recommendations that Rule 37 and the court's inherent power to regulate proceedings justify case-

7  dispositive sanctions against OIC in this case.  Accordingly, I overrule OIC's thirteenth objection,

8  find that case-dispositive sanctions against Defendant OIC Marianas Insurance Corporation are

9  appropriate, will order that OIC's Amended Answer[98] be stricken, and that the Clerk shall enter

10 default against OIC.

11 **E.     OIC's Emergency Motion for Leave to File a Reply Brief**

12        OIC, through its former counsel, filed an "emergency" motion to file a reply to its

13 objection.[99]  Local Rule IB 3-2 governs briefing on objections to a report and recommendation and

14 does not authorize reply briefs.  OIC has not demonstrated good cause to permit this additional

15 brief, and I deny the motion for leave (Doc. 171) and decline to consider the proposed reply brief

16 (Doc. 173).

17 **F.     OIC's New Lawyers' Emergency Motion for Relief**

18        On October 20, 2014, OIC was granted leave to substitute its counsel once more, and new

19

20    [95] *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962); *In re Keegan Management Co. Securities
      Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

21

22    [96] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *In re Keegan*, 78 F.3d at 435.

23    [97] There is some merit to OIC's contention that the protracted history of this discovery dispute
      owes itself to this case being passed among several magistrate judges.  Magistrate Judge Johnston,

24    originally assigned to this case, retired.  The case then passed to his successor, Magistrate Judge Koppe,
      who honored OIC's request to recuse after she conducted a settlement conference.  But OIC must own

25    the bulk of the delay.  *See, e.g.*, Doc. 43 (recounting the delay in OIC's retention of counsel after its first
      set of lawyers withdrew for non-communication and lack of payment, *see also* Doc. 19); Doc 104

26    (Alutiiq's summary of procedural history).

27    [98] Doc. 45.

28    [99] Doc. 171.

1    counsel immediately filed an "emergency motion" for relief from Magistrate Judge Ferenbach's

2    Order.[100]  In this filing, OIC's fourth set of lawyers argues that OIC's third set of lawyers "misled

3    this court" and accuses prior counsel of criminal activities and legal malpractice.[101]  And while

4    OIC concedes that Magistrate Judge Ferenbach's report and recommendation was "well

5    reasoned," it argues that the decision "suffers from the same inherent flaw of all judicial

6    decisions—it is necessarily limited in its basis to the information provided to the court by the

7    parties"[102] and that OIC's former counsel—not OIC itself—was responsible for the discovery

8    failures.  It then argues that the proper remedy for this discovery misconduct is not to default OIC

9    but to sanction its former counsel.  *See id.*  Alutiiq characterizes this last-ditch effort as a

10   procedurally impermissible, second round of objections to Judge Ferenbach's report and

11   recommendation, and just more of the same evasion by OIC.[103]

12        I find the motion unpersuasive.  OIC claims that it was "surprised and distraught" that its

13   former counsel did not make certain arguments on its behalf.  But the time for OIC to express

14   these emotions was—at the latest—during the May 16, 2014, hearing before Magistrate Judge

15   Ferenbach when OIC representatives appeared at the hearing with counsel, not four months after

16   Judge Ferenbach recommended case-dispositive sanctions.  Lyon appeared and testified.[104]

17   Melissa San Martin, who held OIC's power of attorney, also appeared and testified.[105]  As

18   Magistrate Judge Ferenbach summarized in his R&R, San Martin acknowledged in her testimony

19   that OIC had not produced its underwriting file as it was maintained in the ordinary course of

20   business and she had no way of knowing whether OIC's Saipan office gave her a complete set of

---

[100] Doc. 176.

[101] *Id.* at 1.

[102] Doc. 176 at 4.

[103] Doc. 177.

[104] Doc. 166 at 52.

[105] *Id.* at 22.

1   documents.[106]   San Martin's testimony was confirmation of OIC's personally lax and deficient

2   discovery participation, not of a party that was working hard to comply with its discovery

3   obligations but being stymied by its own counsel.   It also belies new counsel's convenient

4   argument that OIC's discovery failures were "attorney failures, and not party failures."[107]

5         The persuasiveness of this motion is further lessened by the reality that the blame-our-last-

6   lawyers plea has become a tired refrain for OIC throughout this case.   *See, e.g.,* Doc. 38 at 10

7   (second lawyers, when seeking to set aside default against OIC, argued that "previous counsel['s]

8   failing to timely provide defendant with its file" was excusable neglect); Doc. 92 (third set of

9   lawyers, in opposing motion for default, argued that Lyon was "bombarded" with former

10   counsel's "last minute demands" and that "[p]rior counsel was obviously overwhelmed by the far

11   superior abilities of his opponent and failed to provide a reasonable framework within which

12   Defendants could meaningfully participate in discovery.").   Clients are generally liable for the acts

13   and omissions of their counsel.[108]   And the pervasive pattern of discovery abuses in this case

14   through numerous sets of attorneys undermines any notion that the responsibility for this

15   contumacious conduct should fall exclusively on the lawyers, not OIC.

16         OIC had numerous opportunities during the course of this protracted litigation to ensure

17   that its discovery obligations were satisfied, and it failed to do so.   The request for emergency

18   relief (Doc. 176) is denied.

19                                            **Conclusion**

20         Accordingly, IT IS HEREBY ORDERED that Magistrate Judge Ferenbach's Report and

21   Recommendation **[Doc. 160] is ACCEPTED and ADOPTED** consistent with this order;

22         IT IS FURTHER ORDERED that Plaintiff Alutiiq International Solutions' Supplemental

23   Motion for Discovery Sanctions **[Doc. 129] is GRANTED**.   The Clerk of Court is directed to

24   **STRIKE** Defendant OIC Marianas Insurance Corporation's Amended Answer **[Doc. 45]** and

25

26         [106] Doc. 160 at 12; Doc. 166 at 29-34.

27         [107] Doc. 176 at 26.

28         [108] *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 396-97 (1993).

1  enter default against Defendant OIC Marianas;

2        IT IS FURTHER ORDERED that Defendant OIC Marianas Insurance Corporation's

3  Emergency Motion for Leave to File Reply to Plaintiff's Response to Defendants Objection to

4  Magistrate's Order and Report and Recommendation **[Doc. 171]** and OIC's Emergency Motion

5  for Relief **[Doc. 176] are DENIED**.

6        Dated March 13, 2015.

7                                                          _____

8                                         Jennifer A. Dorsey
                                       United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28