# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

***

| | |
|---|---|
| ALUTIIQ INTERNATIONAL SOLUTIONS, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>OIC MARIANAS INSURANCE CORPORATION,<br><br>                 Defendant. | Lead Case No. 2:10–cv–1189–JAD–VCF<br><br>**REPORT & RECOMMENDATION**<br><br>MOTION FOR DEFAULT JUDGMENT (#185) |
| ALUTIIQ INTERNATIONAL SOLUTIONS, LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>DENNIS LYON, RUTH LYON, MELISSA SAN MARTIN, NATIVE AMERICAN FUNDS, MANAGEMENT, OCEANIA INSURANCE CORPORATION,<br><br>                Defendants. | Member Case No. 2:11–cv–1104–JAD–VCF |

This matter involves Alutiiq International Solutions' consolidated civil action for recovery on a performance bond under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq*. Before the court is Alutiiq's Motion for Default Judgment (#185)[1] against OIC Marianas Insurance Corporation, Dennis Lyon, Ruth Chavez Lyon, Native American Funds Management Services, and Oceania Insurance Corporation. For the reasons stated below, Alutiiq's motion should be granted in part and denied in part and final judgment should be entered in Alutiiq's favor in the amount of $5,582,096.38.[2]

---

[1] Parenthetical citations refer to the court's docket.
[2] This figure includes prejudgment interest as of August 21, 2015. Prejudgment interest will continue to accrue at $173.03 per day until final judgment is entered.

1

# I. BACKGROUND

In 2008, the Army Corp of Engineers awarded Alutiiq International Solutions ("Alutiiq") a contract to build the OJO Encino Day School in Cuba, New Mexico. (*See* Am. Compl. (#56) at ¶ 6). Alutiiq served as the prime contractor for the project and was required by the Miller Act, 40 U.S.C. § 3131(b), to post a payment performance bond in the event that the project could not be completed on time.

On February 11, 2009, Alutiiq subcontracted with NCC Electrical Services ("NCC") to complete electrical work worth $2,414,001.88. The subcontract required NCC to provide Alutiiq with a payment performance bond, which it did.[3] (*See id*. at ¶¶ 8–11). Under the terms of the bond, OIC Marianas Insurance Corporation ("OIC Marianas"), a company headquartered in Saipan, assumed liability to Alutiiq in the event that NCC failed to complete the electrical work on time. (*Id*.)

Unbeknownst to Alutiiq or NCC, OIC Marianas and its majority shareholder, Dennis Lyon, were allegedly dishonest. (*See id*. at ¶ 12). Between 2003 and 2007, OIC Marianas and Lyon were subject to cease-and-desist orders in Nevada, Georgia, Florida, Montana, Connecticut, Washington, California, Ohio, Texas, Oklahoma, Maryland, and New Mexico for fraud, undercapitalization, and operating as a surety without a license. (*Id*. at ¶¶ 12–14). Consequently, Alutiiq ran into serious problems when NCC defaulted on May 5, 2010. Alutiiq demanded payment from OIC Marianas and received no response. (*See id*. at ¶¶ 19–24).

This spawned a series of lawsuits. The first was commenced in the District of Nevada on July 19, 2010 by Alutiiq against OIC Marianas. It concerns OIC Marianas' contractual obligation to pay amounts owned on the performance bond. (*See generally* Compl. #1); (Am. Compl. #56). The complaint seeks

---

[3] The original amount of the bond was for a lesser amount and the original oblige was allegedly the United States. However, the bond was increased to $2,414,001.88 after NCC Electrical took on additional work under the subcontract with Alutiiq and the name of the oblige was corrected or changed to name Alutiiq.

damages for recovery on the performance bond, fraud, negligent misrepresentation, and violations of Nevada and New Mexico statutes governing sureties.

A second action was commenced in the District of Nevada on July 5, 2011. It alleges facts similar to those alleged in the initial action, and asserts that other parties are liable for the judgment against OIC Marianas for their role in OIC Marianas' failure to pay. *See Alutiiq Int'l Solutions v. Lyon, et al.*, No. 2:11–cv–01104, Compl. #1 (D. Nev. July 5, 2011). This complaint alleges that Dennis Lyon, Ruth Chavez Lyon, Melissa San Martin, and two entities owned by Dennis Lyon—Oceania Insurance Corporation ("Oceania") and Native American Funds Management Services ("NAFMS")—engaged in a conspiracy to defraud surety bond holders, like Alutiiq. The complaint seeks treble damages under the Nevada and federal RICO Acts.[4]

Litigation in both actions has been protracted. On May 13, 2011, the Honorable Kent J. Dawson, U.S. District Judge, entered default judgment against OIC Marianas in the first action because it failed to plead or otherwise defend. (Doc. #31). Judge Dawson awarded Alutiiq $1,552,665.00 in damages, plus interest. (*Id.*) However, judgement was eventually set aside, (Doc. #43), OIC Marianas answered, (Doc. #45), and litigation slowly continued for the next four years.

The second action proceeded similarly. On August 18, 2011, the clerk defaulted NAFMS and Oceania for failing to plead or otherwise defend. (Doc. #23). Between August 30, 2011 and June 5, 2012, Alutiiq filed motions seeking case-dispositive sanctions against Dennis Lyon for abusing discovery and motions for default judgment against NAFMS and Oceania. (Docs. #27, #54, #71). In response, NAFMS and Oceania appeared and petitioned the court to set aside the clerk's entry of default. (Docs. #55).

---

[4] A third action was commenced in the District of New Mexico; Alutiiq prevailed. *See United States v. Alutiiq Int'l Solutions & OIC Marianas Ins. Co., et al.*, No. 10–cv–811–RSS–RHS (D. N.M. 2012).

3

The Honorable Gloria M. Navarro, Chief U.S. District Judge, entered an order resolving all three motions on March 22, 2013. Judge Navarro denied NAFMS and Oceania's motion to set aside because both were aware of the clerk's defaults but inexcusably failed to act. (Doc. #98). Judge Navarro also denied Alutiiq's motion for default judgment because "final adjudication of [the RICO] action is dependent upon the proceedings in the [first] action," which were ongoing. (*Id.*) However, Judge Navarro granted Alutiiq's motion for case-dispositive sanctions against Lyon. (*Id.*). His answer was stricken and the clerk entered default against him. (Doc. #99).

Both actions were later consolidated and Alutiiq filed a third motion for default judgment against NAFMS, Oceania, and Dennis Lyon. The motion sought treble damages under the state and federal RICO acts in the amount of $5,369,818.81. (Doc. #84). The Honorable Andrew P. Gordon, U.S. District Judge, denied the motion. Echoing Judge Navarro, Judge Gordon stated that "Complaint II cannot be viewed in isolation because the claims contained therein necessarily depend on the allegations made against OIC in Complaint I." (Doc. #113 at 5:11–12).

For the next two years, Alutiiq attempted to resolve its complaints on the merits. This proved impossible. OIC Marianas and Lyon repeatedly frustrated Alutiiq's attempts to obtain discoverable information. This resulted in an order from the Honorable Jennifer A. Dorsey, U.S. District Judge, which held that OIC Marianas failed to comply with Judge Koppe and Judge Ferenbach's orders. (Doc. #180). OIC Marianas' answer was stricken and the clerk entered default against it. (Doc. #184). Defaults are now in place against OIC Marianas, NAFMS, Oceania, and Dennis Lyon, the only remaining defendants.[5]

---

[5] *See* (Doc. #23) (NAMFS and Oceania's default); (Doc. #99) (Lyon's default); (Doc. #184) (OIC Marianas' default); *see also* (Doc. #79) (dismissing San Martin); (Mins. Proceedings #202) (recommending Ruth Chavez Lyon be dismiss dismissed).

4

This paved the way for Alutiiq's fifth motion for default judgment, which is before the court. It seeks default judgment against OIC Marianas, Dennis Lyon, Ruth Lyon, NAFMS, and Oceania and treble damages in the amount of $6,350,332.55. (Doc. #185 at 2:2–4); (Doc. #206 at 1:23). The court held hearings on May 19, 2015, and August 4, 2015. (Doc. #195; Mins. Proceedings #202). During the second hearing, Alutiiq submitted evidence of its damages and moved to voluntarily dismiss Ruth Chavez Lyon. Both parties filed supplemental briefs on damages. (Docs. #205, 206, 207). This report and recommendation follows.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs default judgment. Obtaining default judgment requires two steps. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after the clerk enters a default, the plaintiff must petition the court to obtain a default judgment. FED. R. CIV. P. 55(b)(2).

Before considering whether default judgment should be entered, the court has "an affirmative duty" to ensure that it has personal jurisdiction over the defaulted defendant and subject-matter jurisdiction over the plaintiff's action. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citing *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). A judgment without jurisdiction is void. *Id.* (citations omitted).

If jurisdiction exists, the court's decision to enter default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir. 1987). The Ninth Circuit propounded seven factors that courts "may" consider when adjudicating a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in

the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55-05[2], at 55-24 to 55-26).

When ruling on a motion for default judgment, the court accepts the complaint's factual allegations as true but requires the plaintiff to prove damages. *TeleVideo Sys.*, 826 F.2d at 917–18. This rule stems from Rule 8(b)(6), which states that "[a]n allegation other than one relating to the amount of damages— is admitted if a responsive pleading is required and the allegation is not denied." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Damages must be proven to a "reasonable certainty." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) (motion for default judgment); *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (same); *Portland 76 Auto v. Union Oil Co. of Cal.*, 153 F.3d 938, 947 (9th Cir. 1998) (trial). Additionally, the court may not award damages that "differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

### III. DISCUSSION

Ninth Circuit law requires the court to engage in three inquiries when recommending default judgment against OIC Marianas, Lyon, NAFMS, and Oceania: (1) whether the court can enter default judgment (i.e., does jurisdiction exist?); (2) whether the court should enter default judgment (i.e., do the *Eitel* factors favor Alutiiq?); and (3) whether Alutiiq has proven damages. Each inquiry is addressed below.

### I.   **Whether Jurisdiction Exists**

The court's analysis of Alutiiq's motion begins with jurisdiction. *In re Tuli*, 172 F.3d at 712. Generally, jurisdictional allegations must be plausible. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) *cert. denied*, 14-119, 2014 WL 3817554 (U.S. Oct. 14, 2014). However, on a motion for default

judgment, the court accepts the plaintiff's allegations as true. *TeleVideo Sys.*, 826 F.2d at 917–18. After reviewing both complaints, the court finds that it has subject-matter jurisdiction over Alutiiq's action and personal jurisdiction over OIC Marianas, Lyon, NAFMS, and Oceania.

### A.    *Subject-Matter Jurisdiction Exists*

Alutiiq's consolidated action is predicated on 28 U.S.C. § 1332 and 28 U.S.C. § 1331. (Am. Compl. (#56) at ¶ 3); (Compl. (#1) at ¶¶ 1–2). Under 28 U.S.C. § 1332, a federal district court has original jurisdiction over actions between citizens of different states for which the amount in controversy exceeds $75,000.00. Diversity jurisdiction exists only where there is complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *Strawbridge v. Curtiss*, 3 Cranch 267 (1806)).

Alutiiq's complaints satisfy section 1332's requirements. They allege that each Defendant resides in a different state (i.e., Nevada, New Mexico, and the Commonwealth of the Northern Mariana Islands) from Alutiiq, which is an Alaskan company whose principal place of business is in Anchorage. *See* (Am. Compl. (#56) at ¶¶ 1, 4); (Compl. (#1) at ¶¶ 5–13). Additionally, Alutiiq alleges that the amount in controversy in both matters exceeds $75,000.00 because Defendants' breach caused approximately $1,214,520.42 in actual damages. *See* (Compl. (#56) at ¶ 76). Taking these allegations are true, they court finds that subject-matter jurisdiction exists.

The court also concludes that it has subject-matter jurisdiction over Alutiiq's second complaint under section 1331. A federal district court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Alutiiq's second complaint alleges that Lyon, NAFMS, and Oceania violated the federal RICO Act by submitting misleading and fraudulent communications by fax and email. (Compl. (#1) at ¶¶ 73–86). These allegations grant the court subject-matter jurisdiction because they raise a federal question. *See also Lou v. Belzberg*, 834 F.2d 730, 738 (9th Cir. 1987) (holding that the federal RICO statute confers concurrent federal and state

jurisdiction).

**B.     Personal Jurisdiction Exists**

The court also has personal jurisdiction over OIC Marianas, Lyon, NAFMS, and Oceania. A federal court may exercise personal jurisdiction over a defendant if two requirements are met. *Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citation omitted). First, the plaintiff must demonstrate that the defendant meets the minimum-contacts test. *Id*. Second, the plaintiff must properly serve the defendant under Rule 4. *Id.*

Alutiiq satisfied both prongs. It satisfied the first requirement for three reasons. First, it demonstrated that Lyon, OIC Marianas, Oceania, and NAFMS have certain minimum contacts with Nevada. Alutiiq's complaints allege that Lyon is a Las Vegas resident, "the Vice-President and majority shareholder of OIC Marianas," the majority owner of NAFMS, which has a principal place of business in Las Vegas, and that OIC Marianas and Oceania are Lyon's alter ego. *See* (Compl. (#1) at ¶¶ 7, 12, 152–87). It is reasonable for a federal court to exercise personal jurisdiction over a resident defendant, like Lyon, *see Pennoyer v. Neff*, 95 U.S. 714, 720 (1878), and those entities that are the resident defendant's alter ego. *See Iantosca v. Benistar Admin. Servs., Inc.*, 567 Fed. App'x. 1, 4 (1st Cir. 2014) (Souter, Ret. J.) (citations omitted) (discussing alter-ego for jurisdictional purposes); *Viega GmbH v. Eighth Judicial Dist. Court*, 328 P.3d 1152, 1157 (Nev. 2014) (en banc) (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)) (discussing the same).

Second, before Lyon and OIC Marians' answers were stricken, both parties admitted that the bond was signed, issued, and administered out of Las Vegas. *See* (OIC Marianas' Ans. (#45) at 1); (Lyon's Ans. (#12) at 1). These admissions demonstrate that Defendants have sufficient minimum contacts with Nevada because their conduct in the forum gave rise to Alutiiq's action. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).

8

Third, Lyon, OIC Marianas, Oceania, and NAFMS waived their right to contest person jurisdiction. Unlike subject-matter jurisdiction, the court's power to exercise jurisdiction over persons is "flexible." *Jackson v. Continental Trailways, Inc.*, 65 F.R.D. 451, 457 (D. Nev. 1974) (quoting *Hanson v. Denckla*, 357 U.S. 235, 250–251 (1957)). This principle is codified by Rule 12(h), which states that "[a] party waives any defense," including lack of personal jurisdiction, by failing to make a motion under this rule or failing to include the defense in a responsive pleading. *See* FED. R. CIV. P. 12(h)(1). Wavier occurred here. Each Defendant appeared, litigated Alutiiq's allegations, and failed to assert lack of personal jurisdiction as a defense.

Alutiiq also satisfied the second prong of the court's jurisdictional test by serving Lyon, OIC Marianas, Oceania, and NAFMS under Rule 4. (*See* Docs. #18, #20, #21 in 2:11–cv–1104; Doc. #26 in 2:10–cv–1189). Therefore, the court finds that it has personal jurisdiction and may enter default judgment.

## II. Whether the *Eitel* Factors Favor Default Judgment

Alutiiq's motion raises a second question: whether the court should enter default judgment. This decision is discretionary and informed by seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72; *Aldabe*, 616 F.2d at 1092. Each is addressed below.

### A. The First Eitel *Factor*

The first factor—(*viz.*, the possibility of prejudice to Alutiiq)—strongly favors entering default judgment. A possibility of prejudice exists if default judgment is not entered and the plaintiff is left without a means of recovery. *Liberty Ins. Underwriters Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1318 (D. Nev. 2013) (citing *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). Here, Lyon,

OIC Marianas, Oceania, and NAFMS appeared, litigated Alutiiq's claims, and were sanctioned for abusive litigation practices, and defaulted. If default judgment is not entered against them, Alutiiq will have no means of recovery. This is prejudicial. *See PepsiCo*, 238 F. Supp. 2d at 1177.

### B.    *The Second & Third* **Eitel** *Factors*

The second and third *Eitel* factors—(*viz.*, the merits of Alutiiq's claims and the sufficiency of its complaints)—also favor entering default judgment. To warrant default judgment, a complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (Kennedy, J.). Alutiiq's complaints satisfy this standard because its claims for recovery on a performance bond and violation of the federal RICO Act "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).[6]

The court's analysis begins with the merits of the underlying action against OIC Marianas for recovery on the performance bond. The plausibility of this complaint has already been sustained. On March 29, 2011, Judge Dawson denied OIC Marianas' motion to dismiss. He examined Alutiiq's complaint, applied *Ashcroft v. Iqbal*, and stated "the Court finds that Plaintiff has pled a plausible claim for recovery on the performance bond at issue." *Alutiiq Int'l Solutions, LLC v. OIC Marianas Ins. Corp.*, No. 2:10–cv–1189–KJD–RJJ, 2011 WL 1157337, at *2 (D. Nev. Mar. 29, 2011). Judge Dawson subsequently entered default judgment against OIC Marianas. (Doc. #31).[7]

Alutiiq's allegations in the RICO action are also sufficiently pled. To establish a civil RICO claim, a plaintiff must allege conduct of an enterprise through a pattern of racketeering activity causing injury to

---

[6] As stated during the court's May 19, 2015 hearing, (Doc. #195), judgment on these claims will grant Alutiiq the complete relief is seeks. The court, therefore, limits its review to these causes of action.
[7] On October 18, 2012, Alutiiq filed an amended complaint, adding new causes of action based on the same factual allegations. This amendment did not diminish the sufficiency of Alutiiq's complaint.

plaintiff's business or property. *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 U.S.C. § 1964(c)). RICO defines "racketeering activity" as "any act or threat" involving a number of crimes and offenses, including mail fraud. 18 U.S.C. § 1961(1)(A). Pleading mail fraud for RICO purposes requires (1) the existence of a scheme to defraud, (2) the use of United States mails or interstate wire communications to further that scheme, and (3) evidence that defendants did so with a specific intent to defraud.

Alutiiq's complaint alleges that OIC Marianas, Oceania, and NAFMS are Lyon's alter egos, which Lyon used to defraud Alutiiq, even though Lyon knew that his companies were undercapitalized and had received cease-and-desist orders in several jurisdictions for operating suretyships without a license between 2003 and 2007. *See* (Compl. (#1) at ¶¶ 7, 9, 12–57, 73–86). The complaint also states that OIC Marianas, NAFMS, and Lyon knowingly failed to disclose to Alutiiq and NCC that the financial backing supporting the performance bond never existed. (*Id*. at ¶ 32). Lyon, OIC Marianas, Oceania, and NAFMS subsequently "sent misleading and fraudulent communications via facsimile and electronic mail with the inten[t] to defraud" Alutiiq. (*Id*. at ¶ 78). The performance bond and its subsequent modification were among the false and fraudulent communications that were sent via facsimile and electronic mail. These allegation are legally sufficient entitle Alutiiq to recover under the federal RICO Act.

## C.   *The Remaining Four* Eitel *Factors*

The remaining four *Eitel* factors favor Alutiiq. The fourth factor considers the sum of money at stake in the action. *Eitel*, 782 F.2d at 1471–72. The question here is whether the alleged damages are proportional to the alleged harm. *Landstar Ranger, Inc. v. Parth Enter., Inc*., 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp*., 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). Here, OIC Marianas' breach allegedly caused Alutiiq $1,214,520.42 in actual damages.

11

*See* (Compl. (#56) at ¶ 76). Because Alutiiq stated a plausible claim for treble damages under the federal RICO Act, the court finds that Alutiiq's requested damages are proportional to its harm. (Doc. #206 at 1:23).

The fifth *Eitel* factor examines the possibility of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471–72. There is little possibility of a dispute here. Alutiiq's complaints are plausible under *Iqbal* and supported by exhibits. The complaints show that OIC Marianas failed to satisfy its obligation under the performance bond and that Lyon, Oceania, and NAFMS engaged in a scheme to defraud Alutiiq. This satisfies the fifth factor. *Wecosign, Inc*., 845 F. Supp. 2d at 1082 ("Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote."); *Landstar Ranger*, 725 F. Supp. 2d at 921–22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.").

The sixth factor considers whether Defendants' default may have been the product of excusable neglect. *Eitel*, 782 F.2d at 1471–72. The court's record demonstrates that this factors weighs in Alutiiq's favor as a matter of law. On March 22, 2013, Judge Navarro held that NAFMS and Oceania's failure to plead or otherwise defend was not the result of excusable neglect. (Doc. #98 at 7:21–25). On the same day, Judge Navarro entered case-dispositive sanctions against Lyon for willfully disregarding Judge Leen's discovery orders. (*Id*. at 5). Two years later, Judge Dorsey entered an identical order against OIC Marianas for its repeated discovery abuses. (Doc. #180).

The final factor—(*viz*., the strong policy favoring decisions on the merits)—also favors Alutiiq. Since 2010, Lyon, OIC Marianas, Oceania, and NAFMS have refused to participate in litigation despite being served and having actual knowledge of Alutiiq's claims. Rule 55 was designed to address this problem. *Landstar Ranger*, 725 F. Supp. 2d at 922. When it is impossible to adjudicate an action on the

12

merits because a defendant refuses to participate in litigation, the strong policy favoring decisions on the merits is outweighed by the need to finalize controversies in a timely and orderly fashion. *Id.*

Therefore, Alutiiq's Motion for Default Judgment should be granted and final judgment should be entered against Lyon, OIC Marianas, Oceania, and NAFMS.

### III.   <u>Whether Alutiiq has Proven Damages</u>

Having determined that default judgment should be entered, one issue remains: whether Alutiiq should be awarded (1) base damages, (2) treble damages, (3) attorney's fees and costs, (4) prejudgment interest, and (5) litigation sanctions. Alutiiq's request should be granted in part and denied in part. Each request is discussed below.

#### A.   *Base Damages*

Alutiiq's Motion for Default Judgment seeks $1,562,665.00 in base damages. *See* (Docs. #29-2, #185, #206). Damages must be proven to a "reasonable certainty." *In re Catt*, 368 F.3d at 793; *Portland 76 Auto*, 153 F.3d at 947. The Ninth Circuit affords the district court wide latitude when entering default judgment. *Eitel*, 782 F.2d at 1471–72. This latitude is strictly limited in one respect: the court may not award damages that "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Alutiiq requests $1,562,665.00 in base damages and the court finds that it demonstrated to a reasonable certainty that Alutiiq suffered $1,562,665.00 in base damages. This finding is supported by the probative testimony and documentary evidence that Alutiiq proffered during the court's August 4, 2015 hearing.[8] Alutiiq proffered, *inter alia*, (1) the testimony of Gregory Strike, an employee of Alutiiq, (2) seventeen exhibits that were admitted into evidence during the hearing, (3) various affidavits of

---

[8] The August 4, 2015 hearing began at 10:11 a.m. and ended at 4:52 p.m.

13

counsel, and (4) an affidavit by Bart Wachsteter, who was the construction contracts manager for Alutiiq during the relevant period. When Judge Dawson first entered default judgment against OIC Marianas on May 13, 2011, he relied exclusively on the Wachsteter affidavit. *See* (Doc. #31).

Dispute Alutiiq's persuasive showing, the court cannot award $1,562,665.00 in base damages because both complaints allege that OIC Marianas' breach caused base damages in the amount of $1,214,520.42. *See* (Compl. (#56) at ¶ 76); (Compl. (#1) at 24:6). These allegations establish the ceiling for base damages that the court may award on a motion for default judgment. *See* FED. R. CIV. P. 54(c). The court, therefore, recommends awarding Alutiiq $1,214,520.42 in base damages against OIC Marianas, Lyon, NAFMS, and Oceania.

## B.   *Treble Damages*

Alutiiq's Motion for Default Judgment also seeks treble damages. The federal RICO Act provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of [the act] may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c). A finding of liability under the federal RICO Act does not automatically entitle a plaintiff to an award of treble damages, which must be proven to a "reasonable certainty." *TeleVideo Sys.*, 826 F.2d at 917–18; *In re Catt*, 368 F.3d at 793.

To support its treble damages claim, Alutiiq relies on (1) the allegations in both complaints, (2) supporting documents attached to the complaints, (3) the testimony of Gregory Strike, (4) seventeen exhibits that were admitted into evidence on August 4, 2015, (5) various affidavits of counsel, and (6) the Wachsteter affidavit, which Judge Dawson exclusively relied on when entering default judgment against OIC Marianas on May 13, 2011. This evidence persuasively demonstrates that Lyon, OIC Marianas, NAFMS, and Oceania submitting knowingly false and misleading information by fax and email in violation of the RICO Act.

14

Alutiiq's evidence is credible and probative. Defendants' evidence was far less probative. Defendants' key witness, Melissa San Martin, testified that she had knowledge of the various transactions in controversy by virtue of her position as OIC Marianas' vice president. *See* (Mins. Proceedings #202). However, Ms. San Martin also testified that she is Lyon's daughter and her position with OIC Marianas was an unpaid volunteer position. (*Id*.)

These facts support Alutiiq's allegations that OIC Marianas was an undercapitalized corporation engaged in an illegitimate business. Additionally, the court takes judicial notice of the findings of fact by the Honorable Robert H. Scott, U.S. Magistrate Judge for the District of New Mexico. (Doc. #96-3 at 19). In a related action, Judge Scott found that Ms. San Martin "lacked personal knowledge of the transactions which were the subject of this hearing and her testimony was weighed accordingly." (*Id*. at ¶ 13).

Nonetheless, Defendants argue that Alutiiq's evidence is insufficient to award treble damages. The cases on which Defendants rely demonstrate otherwise. Defendants cite *OneBeacon Ins. Co. v. Milbourne*. In the matter, the district judge awarded treble damages under the RICO Act on a motion for default judgment after the plaintiff presented the court with the allegations in the complaint, testimony during an evidentiary hearing, and affidavits of counsel. No. CIV.A.1:04-CV3596WSD, 2005 WL 3797628, at *3 (N.D. Ga. Oct. 20, 2005). *OneBeacon* supports the courts recommendation that treble damages should be awarded here.

The court is also unpersuaded by Defendants' argument that Alutiiq overpaid for a third party to complete NCC's work or that the third party completed additional or unnecessary work. This raises a factual dispute that is inappropriate for default judgment. Alutiiq's complaint pled that "Alutiiq's cost to complete the work under the Subcontract substantially exceeded the balance of NCC's Subcontract price." (Comp. #1 at ¶ 50). This allegation is deemed admitted and taken as true. *TeleVideo Sys.*, 826 F.2d at 917–18. The only issue here is whether Alutiiq submitted evidence proving these damages to reasonable

15

certainty. As discussed above, the court finds that Alutiiq satisfied its burden.

Therefore, the court recommends awarding Alutiiq treble damages against Lyon, NAFMS, and Oceania in the amount of $3,643,561.26. However, the court also recommends denying Alutiiq's request for treble damages against OIC Marianas because the complaint in the underlying action did not request treble damages. *See* (Compl. #1 at 24). The court may not award damages that "differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

**C.    *Attorney's Fees & Costs***

Alutiiq's Motion for Default Judgment also requests attorney's fees and costs. Under the RICO Act, a prevailing plaintiff "shall" recover "the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Alutiiq's request for attorney's fees and costs should be granted.

1.    Legal Standard

The Ninth Circuit affords trial courts considerable discretion in determining the reasonableness of attorney's fees and costs. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Alutiiq requests $326,750.20 in attorney's fees and costs. *See* (Doc. #206 at 3). This amount reflects the legal fees Alutiiq incurred from approximately July 19, 2010, through August 4, 2015. (*Id.*) Alutiiq supports his request for attorney's fees and costs with an affidavit and records itemizing the work performed and fees incurred. (*Id.*); (Doc. #185).

To determine reasonable attorney's fees, courts in the Ninth Circuit use the "lodestar" method. Under this method, the court multiplies the reasonable hourly rate by the number of hours reasonably expended in the litigation. *Morales v. City of San Rafael*, 96 F.3d 359, 363–65 (9th Cir. 1995). In calculating the lodestar figure, the court considers the following the factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of employment to the attorney due to acceptance of the case; (5) the customary

16

fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed on the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, if any; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 n. 3 (9th Cir. 2000) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

2.     <u>Analysis</u>

The court recommends awarding Alutiiq $326,750.20 in attorney's fees and costs. The first step in setting reasonable attorney's fees is to determine the number of hours Alutiiq's attorneys reasonably expended on the litigation. *Morales*, 96 F.3d at 363–65. Relevant *Kerr* factors include (1) the time and labor required, (2) the results obtained and the amount involved, and (3) the novelty and difficulty of the questions involved. Here, Alutiiq's counsel expended hundreds of hours on Alutiiq's consolidated action between July 19, 2010, and August 4, 2015. *See* (Docs. #185, #206). After reviewing counsel's affidavits, the court finds that the time spent was reasonable in light of the nature of Alutiiq's claims and Defendants' litigation practices, which caused considerable delay.

The second step in setting the reasonable attorney's fees is to determine a reasonable hourly rate. The controlling test for determining a reasonable hourly rate requires the rate to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (holding that the reasonable rate to apply under section 1988 is the rate commonly charged in the local legal community); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). "[N]ormally the relevant legal community for determining the prevailing market rates for attorney's fees is the community in which the forum is situated." *Gates*, 987 F.2d at 1405.

17

Here, the relevant community is Las Vegas, Nevada and Alutiiq's attorneys at Ball Janik, Watt, Tieder, Hoffar & Fitzgerald, and Jolley, Urga, Woodbury & Little charged approximately $335.00 per hour. *See* (Docs. #185, #206). This fee is reasonable in Las Vegas. *See, e.g.*, *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013) (finding hourly rates between $375.00 and $400.00 reasonable in Las Vegas); *Snow v. McDaniel*, No. 3:08–cv–00046–RCJ–VPC, 2014 WL 590489, at *1 (D. Nev. Feb. 14, 2014) (finding a $250.00 hourly rate reasonably within the context of a section 1988 inquiry); *see also Gibbs v. Rivers Transp. Group, Inc*., No. 2:13–cv–00935–JAD–NJK, 2014 WL 204928, at *3 (D. Nev. Jan. 17, 2014) (finding a $250.00 hourly rate reasonable in Las Vegas); *Conboy v. Wynn Las Vegas, LLC*, No. 2:11–cv–01649–JCM–CWH, 2012 WL 6100313, at *3 (D. Nev. Dec. 7, 2012) (same); A*m. Gen. Life Ins. Co. v. Futrell*, No. 2:11–cv–00977–PMP–CWH, 2012 WL 5497901, at *3 (D. Nev. Nov. 13, 2012) (finding hourly rates between $250.00 and $400.00 reasonable in Las Vegas).

The final step in determining the reasonable attorney's fees is to multiply the number of hours reasonably worked by the reasonable hourly rate for each person who performed the work. Here, that calculation yields a total of $326,750.20. There is a "strong presumption" that the lodestar figure represents a reasonable fee that the court should enhance or reduce only in rare and exceptional cases. *Jordan v. Multnomah Cnty*., 815 F.2d 1258, 1262 (9th Cir. 1987); *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The court sees no need to adjust the lodestar figure here.

Therefore, Alutiiq request for $326,750.20 in attorney's fees and costs should be granted against Lyon, NAFMS, and Oceania.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

18

**D.**   *Prejudgment Interest*

Alutiiq's Motion for Default Judgment also requests prejudgment interest in the amount of $1,268,291.07. This figure represents the occurred interest on the base damages and treble damages figures in Alutiiq's Motion for Default Judgment. Alutiiq's request for prejudgment interest should be granted in part and denied in part.

The court's decision to award prejudgment interest is discretionary. *Wickham Contracting Co. v. Local Union No. 3*, 955 F.2d 831, 834 (2d Cir. 1992). The main function of an award of prejudgment interest is to fully compensate a plaintiff for damages suffered. *See Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 637 F.2d 77 (2d Cir. 1980) ("An award of prejudgment interest is in the first instance, compensatory."). By contrast, RICO's treble damages provision is punitive in nature. "[P]rejudgment interest should not be awarded if the statutory obligation on which interest is sought is punitive in nature." *Wickham Contracting Co.*, 955 F.2d at 834.

Therefore, the court recommends granting Alutiiq's request for prejudgment interest on the base damages alleged in its pleadings, $1,214,520.42. *See* (Compl. (#56) at ¶ 76); (Compl. (#1) at 24:6). Because the performance bond did not specify a rate of interest, Nevada law controls. Nevada Revised Statute § 99.040 sets the applicable prejudgment interest rate at 5.25 percent. When applied to Alutiiq's base damages, the statutory prejudgment interest rate yields $173.03 of interest per day. As of August 21, 2015, this matter has been pending for 1,907 days, which yields $329,968.21 in prejudgment interest.

Therefore, the court recommends awarding Alutiiq $329,968.21 in prejudgment interest against OIC Marianas, Lyon, NAFMS, and Oceania, plus an additional $173.03 per day until final judgment is entered.

19

### E. *Litigation Sanctions*

Finally, Alutiiq's Motion for Default Judgment seeks an order requiring Defendants to pay Alutiiq litigation sanctions that were previously awarded by Magistrate Judges Leen and Ferenbach. In total, Alutiiq seeks $67,296.29. *See* (Docs. #185, #206). On September 17, 2012, Judge Leen ordered Dennis Lyon to pay Alutiiq $8,925.00 in fees and $749.29 in costs associated with a Motion to Compel. (Doc. #89). On March 17, 2015, Judge Ferenbach ordered OIC Marianas to pay Alutiiq $57,621.99 in attorney's fees and costs. (Doc. #182). Neither of these figures have been included in Alutiiq's separate request for attorney's fees and costs, discussed above. *See* (Doc. #185-1 at ¶ 7) (stating that these requests for fees and costs have been accounted for separately in Alutiiq's pleadings and declarations).

On April 9, 2015, Judge Dorsey awarded Alutiiq these sanctions and judgment was entered in Alutiiq's favor in the amount of $67,296.29 on the same day. *See* (Docs. #189, #190). However, Rule 58 states that "[e]very judgment and amended judgment must be set out in a separate document." FED. R. CIV. P. 58(a). Therefore, the court recommends striking the April 9, 2015 judgment and incorporating it into the final judgment recommended here.

## IV. CONCLUSION

The court finds that it has jurisdiction over this matter and that default judgment should be entered against OIC Marianas, NAFMS, Oceania, and Dennis Lyon. The court also finds that Alutiiq satisfied its burden of proving damages to a reasonable certainty. In sum, the court recommends (1) awarding $1,214,520.42 in base damages, (2) awarding $3,643,561.26 in treble damages, (3) awarding $329,968.21 in prejudgment interest, (4) awarding $326,750.20 in attorney's fees and costs, and (5) striking the April 9, 2015 judgment for $67,296.29 and incorporating it into the final judgment recommended here. Therefore, final judgment should be entered in Alutiiq's favor in the amount of $5,582,096.38, plus an additional $173.03 in prejudgment interest per day until final judgment is entered.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Alutiiq's Motion for Default Judgment (#185) be GRANTED in part and DENIED in part.

IT IS FURTHER RECOMMENDED that Alutiiq's Motion for Default Judgment (#185) be GRANTED with regard to OIC Marianas, NAFMS, Oceania, and Dennis Lyon.

IT IS FURTHER RECOMMENDED that Alutiiq's unopposed oral motion, *see* (Mins. Proceedings #202), to voluntarily dismiss Ruth Chavez Lyon be GRANTED and Alutiiq's Motion for Default Judgment (#185) be DENIED as moot with regard to Ruth Chavez Lyon.

IT IS FURTHER RECOMMENDED that Alutiiq be awarded BASE DAMAGES in the amount of $1,214,520.42 against OIC Marianas, NAFMS, Oceania, and Dennis Lyon, jointly and severally.

IT IS FURTHER RECOMMENDED that Alutiiq be awarded TREBLE DAMAGES in the amount of $3,643,561.26 against NAFMS, Oceania, and Dennis Lyon, jointly and severally.

IT IS FURTHER RECOMMENDED that Alutiiq be awarded PREJUDGMENT INTEREST in the amount of $329,968.21 against OIC Marianas, NAFMS, Oceania, and Dennis Lyon, plus an additional $173.03 per day until final judgment is entered, jointly and severally.

IT IS FURTHER RECOMMENDED that Alutiiq be awarded ATTORNEYS' FEES and COSTS against NAFMS, Oceania, and Dennis Lyon in the amount of $326,750.20, jointly and severally.

IT IS FURTHER RECOMMENDED that the April 9, 2015 judgment for $67,296.29 be STRICKEN and Alutiiq be awarded LITIGATION SANCTIONS against OIC Marianas and Dennis Lyon in the amount of $67,296.29, jointly and severally.

IT IS FURTHER RECOMMENDED that FINAL JUDGMENT be entered against OIC Marianas, NAFMS, Oceania, and Dennis Lyon in Alutiiq's favor in the amount of $5,582,096.38.

IT IS SO RECOMMENDED.

**NOTICE**

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 21st day of August, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE