UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALUTIIQ INTERNATIONAL SOLUTIONS, LLC,<br><br>        Plaintiff<br>vs.<br><br>OIC MARIANAS INSURANCE CORPORATION,<br><br>        Defendant | Lead Case: 2:10-cv-01189-JAD-VCF<br><br>*Consolidated with* |
| ALUTIIQ INTERNATIONAL SOLUTIONS, LLC,<br><br>        Plaintiff<br>vs.<br><br>Dennis Lyon, Native American Funds Management, Oceania Insurance Corporation,<br><br>        Defendants | Member Case: 2:11-cv-01104-JAD-VCF |

**Order Adopting Report and Recommendation [208] in Part, Sustaining and Overruling Objections [211, 212] to Report and Recommendation, Granting in Part Motion for Default Judgment [185], and Directing the Entry of Final Judgment**

After four years of well-documented delays and litigation abuses by defendants OIC Marianas Insurance Corporation ("OIC"), Oceania Insurance Corporation, Native American Funds Management ("NAFM"), and their principal Dennis Lyon in these consolidated performance-bond actions, plaintiff Alutiiq International Solutions, Inc. secured defaults against all defendants.[1] Alutiiq moves for a default judgment,[2] and Magistrate Judge Cam Ferenbach recommends that I grant the motion in part and award Alutiiq $5,582,096.38 against OIC, Lyon, NAFM, and Oceania, which includes treble damages, attorneys fees, costs, previously awarded litigation

---

[1] ECF 180 at 4, n.5.  All "ECF" references are to the docket in the lead case (2:10-cv-1189-JAD-VCF) unless otherwise indicated.

[2] ECF 185.

sanctions, and prejudgment interest.[3] Both sides raise various objections to the report and recommendation ("R&R").

Having thoughtfully considered de novo Magistrate Judge Ferenbach's findings and recommendations and the parties' extensive briefing and objections on these issues, I adopt the magistrate judge's findings and accept his recommendation in part, sustain some objections and overrule others, and direct the entry of final judgment in Alutiiq's favor.

**Background**

This litigation over a performance bond issued by OIC to guaranty NCC Electrical Service's construction work on the OJO Encino Day School in New Mexico spans three lawsuits, two of which are consolidated here.[4] In these consolidated matters, the project's prime contractor Alutiiq alleges that OIC (headquartered in Saipan) and its majority shareholder Dennis Lyon and his related entities Oceania and construction-funds controller NAFM engaged in a scheme to defraud and owe Alutiiq more than $1.5 million for the work Alutiiq had to replace after NCC failed to complete its obligations on the project.[5]

In the first-filed action (2:10-cv-1189-JAD-VCF, "the OIC case"), Alutiiq sues OIC for recovery on performance bond, fraud, negligent misrepresentation/concealment, and violations of Nevada's and New Mexico's laws prohibiting insurers from operating without a certificate of authority.[6] In the second-filed action (2:11-cv-1104-JAD-VCF, "the Lyon case"), Alutiiq claims that Dennis Lyon, Ruth Chavez Lyon, Melissa San Martin, and two entities owned by Dennis Lyon—Oceania and NAFM—are liable for the judgment against OIC for their role in OIC's failure to pay. In that complaint, Alutiiq pleads claims for fraud, state and federal RICO violations, civil conspiracy, negligent misrepresentation/concealment, and violating Nevada's and

---

[3] ECF 208.

[4] 2:10-cv-1189-JAD-VCF; 2:11-cv-1104-JAD-VCF. A third case was filed in the District of New Mexico.

[5] ECF 7 at 23; ECF 1 at 3–9 in 2:11-cv-1104.

[6] ECF 56.

New Mexico's laws prohibiting insurers from operating without a certificate of authority, along with corporate-liability/alter-ego theories.[7] Alutiiq prays for treble damages under RICO.

Although U.S. District Judge Kent Dawson initially entered default judgment against OIC and in favor of Alutiiq in the OIC action in 2011,[8] that judgment was set aside,[9] OIC answered,[10] and the litigation continued for four years until I struck OIC's answer and entered default against it as a case-dispositive sanction for pervasive discovery abuses.[11] In the Lyon case, defaults were entered against NAFM and Oceania for failing to plead or otherwise defend,[12] Dennis Lyon's answer was stricken as a case-dispositive sanction for discovery abuses,[13] and the claims against San Martin were dismissed.[14]

With defaults in place against OIC, Lyon, NAFM, and Oceania, Alutiiq now brings its fifth motion for default judgment[15] against these defendants and moves to voluntarily dismiss its claims against Ruth Chavez Lyon.[16] After an evidentiary hearing on the motion[17] and reviewing

---

[7] ECF 1 in 2:11-cv-1104.

[8] ECF 31.

[9] ECF 43.

[10] ECF 45.

[11] ECF 208.

[12] ECF 23 in 2:11-cv-1104.

[13] ECF 98 in 2:11-cv-1104.

[14] ECF 79 in 2:11-cv-1104.

[15] *See* history recounted in ECF 208 at 4–5; ECF 185.

[16] ECF 202 (minutes); 208 at 5 ("During the second hearing [on this motion for default judgment], Alutiiq . . . moved to voluntarily dismiss Ruth Chavez Lyon."); ECF 210 (partial transcript of closing arguments) at 6–11 (wherein Alutiiq moved to voluntarily dismiss its claims against Ruth Chavez Lyon and the magistrate judge recommended that the claims against this defendant be dismissed without prejudice).

[17] ECF 210, 214 (partial transcripts of 8/4/15 evidentiary hearing).

the parties' briefing and supplemental briefing, Magistrate Judge Ferenbach issued a 22-page report and recommendation.[18] He evaluates the motion under the *Eitel v. McCool*[19] factors and recommends that I voluntarily dismiss the claims against Ruth Chavez Lyon, award base damages of $1,214,20.42 against all remaining defendants, jointly and severally (against OIC on its performance-bond contract claim in the OIC case, and against the remaining defendants on the RICO claim in the Lyon case); add treble damages of $3,643,561.21 against NAFM, Oceania, and Lyon, plus pre- and post-judgment interest, attorneys fees, and costs, along with my previous award of $67,296.29 in litigation sanctions against OIC and Lyon; for a total, final judgment of $5,582,096.38 in favor of Alutiiq.[20]

Both parties object.[21] Alutiiq finds two errors in Magistrate Judge Ferenbach's award:

1. <u>The magistrate judge's limitation of its base damages to $1,214,520.42 when Alutiiq proved base damages of $1,562,665.</u> Alutiiq argues that the magistrate judge erroneously believed that Alutiiq only prayed for $1,214,520.42, when it actually prayed for $1,562,665 in the first amended complaint, and Rule 54(c) does not limit its default judgment to $1,214,520.42; and

2. <u>The magistrate judge's limitation of his review to just two of Alutiiq's claims deprived Alutiiq of treble or punitive damages and attorneys fees against OIC.</u>[22] Alutiiq argues that the magistrate judge erroneously believed that deciding the RICO claim from the Lyon case and the performance-bond claim would afford Alutiiq complete relief[23] and, in fact, his failure to address any other claim in the

---

[18] ECF 208.

[19] *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

[20] ECF 208 at 21.

[21] ECF 211, 212.

[22] ECF 212.

[23] ECF 212 at 6–7 (citing ECF 208 at 10, n. 6).

1  OIC case meant that the treble-damages award was recommended only against
2  Lyon, NAFM, and Oceania.[24]
3  Defendants candidly acknowledge they cannot dispute these errors.[25] They then offer
4  seven of their own objections: (1) treble damages were not warranted; (2) regardless, the
5  magistrate judge's math was wrong: he quadrupled—not trebled—the RICO award; (3) the R&R
6  improperly lumps OIC in with the other defendants in the total award even though the magistrate
7  judge made a point not to award treble damages against OIC; (4) the magistrate judge ignored the
8  requested judgment set-offs; (5) the magistrate judge erroneously concluded that evidence
9  regarding work on the project was relevant to liability, instead of just damages; (6) the attorneys
10 fees and costs award was unreasonable; and (7) prejudgment interest was miscalculated.[26] Alutiiq
11 "urges this Court to reject" categorically these objections, but it offers no substantive response to
12 the claim that the magistrate judge improperly quadrupled—not trebled—the RICO damages.[27] I
13 consider each challenged portion of the R&R *de novo*.

### Discussion

15 When a party files specific written objections to a United States magistrate judge's
16 findings and recommendations,[28] the district court must make a de novo determination of those
17 portions of the report to which objections are made.[29] The court may accept, reject, or modify, in
18 whole or in part, the magistrate judge's findings and recommendations.[30] Having now completed
19 a de novo review of this matter, I sustain some objections and overrule others, grant the motion

---

[24] *See* ECF 208 at 21, lines 11-13.

[25] ECF 215.

[26] ECF 211.

[27] ECF 216.

[28] 28 U.S.C. § 636(b); D. Nev R. IB 3-2.

[29] *Id*.

[30] *Id*.

for default judgment in part, and enter final judgment in Alutiiq's favor.

**A.    Alutiiq is entitled to a base award of $1,562,665 in damages.**

Alutiiq's first objection is to Magistrate Judge Ferenbach's finding that Alutiiq was only entitled to $1,215,520.42 in base damages—not the $1,562,665.00 it now moves for and proved—because Alutiiq cannot recover more damages than it prayed for, and "both complaints allege that OIC Marianas' breach caused base damages in the amount of $1,214,520.42," which now establishes "the ceiling for base damages that the court may award on a motion for default judgment."[31] Alutiiq claims this characterization of its pleadings is incorrect: it specifically alleged base damages of $1,562,665.00, so FRCP 54(c) does not cap its damages at $1,212,520.42.[32]

It appears that Alutiiq's characterization of its damages allegations is accurate. In its First Amended Complaint in the OIC case, Alutiiq prays for "not less than $1,214,520.42, [with] the exact amount to be proven at trial,"[33] and states that "Alutiiq's cost to complete the Work exceeds the balance of NCC's Subcontract price. The excess costs to complete the Work amounts [sic] to no less than $1,552,665, [with] the precise amount to be determined at trial."[34] And in the Lyon case, Alutiiq prayed for "an amount exceeding $75,000," the jurisdictional threshold, and alleged that the excess costs to complete the bonded work "amounted to at least $1,552,665."[35] Defendants have responded that they "cannot disagree with" this point: "Alutiiq did allege base damages against [OIC Marianas] for $1,552,665."[36]

Rule 54(c) states that "[a] default judgment must not differ in kind from, or exceed in

---

[31] ECF 208 at 14.

[32] ECF 212 at 4.

[33] ECF 56 at 11 (prayer ¶ A).

[34] ECF 56 at ¶ 24.

[35] ECF 1 at ¶ 50 in 2:11-cv-1104.

[36] ECF 215 at 1, 2.

amount, what is demanded in the pleadings." This rule and its many state analogues "have led to a dizzying array of judicial decisions addressing the precise meaning of the requirement that a default judgment may not exceed in amount that prayed for in the demand for judgment."[37] The rule becomes even more difficult to apply when the complaint prays for an amount "in excess" of a sum certain or "an amount to be proven at trial." But the Ninth Circuit panel's decision in *Henry v. Sneiders*[38] suggests that Rule 54(c) permits a plaintiff to recover more than the stated amount if the prayer seeks an amount to be "proved at the time of trial."[39]

In *Henry*, the plaintiff prayed for judgment of "$71,243.68 . . . and for [p]laintiff's other damages as are proved at the time of trial, together with interest and costs."[40] When the district court entered a default judgment of more than $200,000, the defendant argued that it violated Rule 54(c) because the award "exceeded the $71,243.68 prayed for in the complaint."[41] The panel rejected the argument and upheld the award because the prayer sought more than $71,243.68:

> That part of the prayer, however, was for the amount that the plaintiff had paid to the defendants. In addition, plaintiff prayed for additional damages for breach of contract, the amount of which was to be proved at trial. The prayer was not limited to $71,243.68, and the default judgment did not exceed the amount prayed for.[42]

This reasoning is also consistent with the purpose of the damages limitation in Rule 54(c), which

---

[37] *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000), certified question answered, 18 P.3d 895 (2001) (certifying the question to Hawaii Supreme Court to interpret Haw R. Civ. P. 54(c)) (internal quotation marks and citation omitted).

[38] *Henry v. Sneiders,* 490 F.2d 315, 317 (9th Cir. 1974) (*per curiam* ), *cert. denied,* 419 U.S. 832, *reh'g denied,* 419 U.S. 1060 (1974).

[39] *See also Merrifield v. Miner's Inn Restaurant & Lounge,* 2006 WL 4285241 at *3 (E.D.Cal. Sept. 25, 2006) ("It has been held that where a type of damages is requested in the complaint in an amount to be proved, but the amount is not specified, recovery in excess of an amount stated is permitted.").

[40] *Henry*, 490 F.2d at 317 n.2.

[41] *Id*. at 317.

[42] *Id*.

is to put the defendant on notice of the extent of his liability if he chooses not to defend a claim.[43]

By making it clear that Alutiiq was seeking an amount that would be proven at trial but no less than $1,214,520.42,[44] and that the $1,552,665 in excess costs to complete the work would figure heavily into the damages calculations,[45] Alutiiq's allegations and prayer put the defendants on notice that a $1,552,665 judgment could be expected in the event of a default. Accordingly, Rule 54(c) does not require that the $1,552,665 in damages that Alutiiq proved be reduced to $1,214,520.42. Alutiiq's first objection is sustained.

**B.     Alutiiq is not entitled to punitive damages, treble damages, or additional attorneys fees against OIC.**

Alutiiq's second objection is that Magistrate Judge Ferenbach confined his review to just two of Alutiiq's several claims based on an erroneous belief that this limited analysis would still "grant Alutiiq the complete relief i[t] seeks."[46] As the concluding paragraphs of the R&R reveal, by limiting the review of Alutiiq's claims against OIC to its claim for recovery on the bond, the magistrate judge deprived Alutiiq of an opportunity for treble or punitive damages and attorneys fees against OIC.[47]

Defendants candidly admit they cannot dispute this error.[48] They acknowledge that "the Magistrate's conclusion regarding two causes of action affording complete relief was not something ever briefed or discussed on the record" and that "the transcript and the minute order

---

[43] CHARLES WRIGHT, ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2663 (2014).

[44] ECF 56 at 11.

[45] ECF 56 at ¶ 24.

[46] ECF 208 at 10, n.6.

[47] ECF 208 at 21, lines 11–13 and 17–18 (recommending that Alutiiq be awarded treble damages and attorneys fees and costs "against NAFM, Oceania, and Dennis Lyon . . . jointly and severally").

[48] ECF 215.

do not suggest that there were any such discussions."[49]  With all parties in agreement that limiting the analysis of OIC's liability to the performance-bond claim was not something the parties stipulated to and reduced the types of relief that Alutiiq might be entitled to, I consider whether Alutiiq is entitled to an award of punitive damages, treble damages, or attorneys fees against OIC based on one of its other claims.

### 1. *Alutiiq has not proven its entitlement to punitive damages against OIC.*

The first step in this analysis would be to evaluate one of Alutiiq's other claims under the *Eitel v. McCool*[50] factors.  But even if I were to conclude that Alutiiq is entitled to default judgment on one of its other claims against OIC, I would not award Alutiiq punitive damages.  "A plaintiff is never entitled to punitive damages as a matter of right"[51]; an award of punitive damages requires clear and convincing evidence of fraud, malice, or oppression.[52]  When punitive damages are sought by default judgment, the court must have independent evidence to support the award because punitive-damages-worthy conduct alleged in a complaint is not regarded as admitted by default.[53]

Alutiiq has not shown that OIC's conduct merits an award of punitive damages.  A court must consider "numerous factors including the defendant's financial position, culpability, and the extent to which this culpability offends one's sense of justice" when determining whether a punitive-damages award in any amount is warranted.[54]  Alutiiq has not met its burden with respect to any of these factors.  Although it suggests that punitive damages are appropriate because

---

[49] ECF 215 at 3.

[50] *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

[51] *Dillard Department Stores v. Beckwith*, 989 P.2d 882, 887 (Nev. 1999) (quoting *Ramada Inns v. Sharp*, 711 P.2d 1, 2 (Nev. 1985)).

[52] *Bongiovi v. Sullivan*, 138 P.3d 433, 450–51 (Nev. 2006).

[53] *See, e.g., Matter of Gober*, 100 F.3d 1195, 1205 (5th Cir. 1996) (conduct sufficient to warrant punitive damages is not regarded as admitted by default).

[54] *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1053 (Nev. 2000).

1  "Nevada law is clear that insure[r]s like OIC Marianas who wrongfully refuse to pay covered
2  claims are subject to punitive damages,"[55] OIC is not an insurer, and Alutiiq has pled no bad-faith
3  claim.[56] Alutiiq has not shown—and I do not find—that the Nevada Supreme Court would extend
4  the principles it has developed for consumer-insurance relationships to this case.  And Alutiiq has
5  not offered evidence of OIC's current financial status,[57] culpability, or the extent to which this
6  culpability offends one's sense of justice.  Accordingly, even had the magistrate judge found that
7  Alutiiq is entitled to default judgment on one of its other claims for which punitive damages are
8  recoverable, the net result would be the same: Alutiiq has not met its burden of demonstrating that
9  an award of punitive damages is appropriate.

### 2. *Alutiiq's complaint against OIC cannot now be deemed to include a RICO claim.*

12  I also decline Alutiiq's request that its complaint against OIC be deemed amended to
13  include a RICO claim against OIC.[58]  FRCP 15(b)(2) allows a court to conform the pleadings to
14  the evidence when issues are tried by consent.  But this case was not tried; the parties appeared for
15  a hearing under FRCP 55(b)(2) to determine the amount of damages on default.  Rule 15(b)(2) has
16  no application here.
17  FRCP 54(c) does, however.  It states that "[a] default judgment must not differ in kind
18  from . . . what is demanded in the pleadings."  To grant Alutiiq's motion would be to allow RICO

---

[55] ECF 185 at 11.

[56] *See, e.g., Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 140 n. 19 (1962) ("suretyship is not insurance"); *Great Amer. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997) (distinguishing suretyship from consumer-insurance relationship); *see also Nevada Power Co. v. Calpine Corp.*, 2006 WL 1582101 (D. Nev. 2006) (quoting *Cates Constr., Inc. v. Talbot Partners*, 86 Cal. Rptr. 2d 855, 871 (Cal. 1999), "Although suretyship is listed in the Insurance Code as a class of insurance, it does not follow that a surety bond equates to a policy of insurance under the common law or common law theories of liability.").

[57] Although there are OIC financial statements in the record, *see* Exhibits 3, 9, 15, 58, none is more recent than 2011.

[58] ECF 212 at 10–12.

damages, which include treble damages, and are different in kind from those demanded in Alutiiq's amended complaint against OIC.[59] The Ninth Circuit has cautioned that "that pleading requirements should be enforced strictly when default judgments are sought under RICO," in part because "the monetary penalty for failure to answer [is] greatly enhanced by the provisions for treble damages."[60] I heed that warning.[61] Alutiiq's suggestion that "It would be a manifest injustice for OIC Marianas to escape liability for the same damages as the other defendants" forgets that this issue was entirely within Alutiiq's control. As the master of its complaint, Alutiiq chose which claims to plead against which defendants, and it chose not to include a RICO claim against OIC.[62] Alutiiq has not pled, and I do not deem Alutiiq to have pled, a RICO claim against OIC.

### 3. *Alutiiq has not demonstrated its entitlement to attorneys fees under NMSA § 59A-16-30.*

Finally, I reject Alutiiq's contention that it is entitled to an award of attorneys fees against OIC based on its fifth claim for relief, which alleges "Liability under NMSA § 59A-16-30."[63] Alutiiq has not shown by its conclusory argument[64] that it is a "person covered by Chapter 59A, Article 16 NMSA 1978 who has suffered damages as a result of a violation of that article by an

---

[59] The purpose of Rule 54(c) is to put the defendant on notice of the relief sought against it. *See, e.g.*, *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008).

[60] *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988).

[61] Magistrate Judge Ferenbach did, too. *See* ECF 208 at 16, lines 2–6.

[62] Alutiiq's argument also ignores the difference between punitive damages and treble damages under RICO. *See, e.g.*, Judith A. Morse, *Treble Damages Under Rico: Characterization and Computation*, 61 NOTRE DAME L. REV. 526, 528 (1986) ("Unlike punitive damages, treble damages are not discretionary either in award or amount, they are not based upon an amount adjudged necessary to punish or deter, and they are not commensurate with the willful, wanton, or reckless conduct of the wrongdoer. [So] RICO treble damages are neither awarded for the same reasons nor in the same manner as either compensatory or punitive damages.").

[63] ECF 56 at 10.

[64] ECF 212 at 10.

insurer or agent"[65] or pointed to any facts in the complaint against OIC that prove such a claim. Even if OIC's liability for violation of this statute could be deemed true by virtue of the default, Alutiiq has not proven (or even attempted to show) that it sustained damages in this case as a result of OIC's failure to obtain a certificate of authority from the State of New Mexico, which is the factual premise of this claim.[66] As a result, Alutiiq has not shown that it is the "prevailing party" with respect to this claim and that this court should exercise its discretion under the statute to award it attorneys fees. Accordingly, I do not find that the record supports an award of attorneys fees against OIC under NMSA § 59A-16-30.[67]

Alutiiq's second objection is overruled. I now turn to defendants' objections.

**C.    Treble damages in the amount of $4,687,995 are warranted in the Lyon case.**

Defendants' first objection is that the magistrate judge lacked the necessary quantum of evidence to recommend an award of treble damages for the RICO violation.[68] Their second objection is that even if a treble-damages award is justified, the magistrate judge's math was wrong: he quadrupled, not trebled, the base damages in his recommendation. I overrule the first objection but sustain the second.

   *1.    Alutiiq presented sufficient evidence to support a treble-damages award on its RICO claim.*

Alutiiq's burden was to show with "competent proof, not based upon mere speculation and surmise" the amount of its damages to its business proximately caused by the predicate acts.[69]

---

[65] NMSA § 59A-16-30

[66] *Id*.

[67] I have already awarded Alutiiq $57,621.99 against OIC for attorneys fees and costs expended due to OIC's litigation abuses. *See* ECF 189; *infra* n. 101.

[68] ECF 211 at 4.

[69] *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 451 (9th Cir. 1991); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). The predicate acts themselves are proven by the predicate acts in the complaint. *See*

Alutiiq met that burden with the declaration of Bart Wachsteter[70] and the declaration and evidentiary-hearing testimony of Greg Strike.[71] Wachsteter, Alutiiq's construction contracts manager, offered a detailed factual declaration and properly authenticated documents from Alutiiq's business records to prove Alutiiq's out-of-pocket costs to complete NCC's work on the project. Greg Strike, Alutiiq's National Vice President of Construction during the relevant time period and the person responsible for setting up and managing Alutiiq's bonding program,[72] further authenticated those business records during his testimony at the prove-up hearing before Magistrate Judge Ferenbach.[73]

Strike also offered further corroboration of the reasonableness of Alutiiq's costs to complete NCC's work[74] and described Alutiiq's efforts to mitigate those costs.[75] Strike also testified that Alutiiq was unaware of the key facts that OIC was not licensed at the time the bond was issued and that OIC had not been approved to issue bonds on government projects like this one—facts that were material to Alutiiq because, had it known these facts before NCC procured the bond, Alutiiq would have had NCC procure a bond from a different surety or provide additional security to protect Alutiiq.[76] On cross examination, NAFM and OIC representative

---

ECF 1 in 11-cv-1104, ¶¶ 59–71, 74–85.

[70] ECF 29-3 (Wachsteter Decl.).

[71] ECF 192-3 (Strike Decl.). Strike testified at the 8/4/15 evidentiary hearing, but his testimony, which has been preserved in the court's audio-recording system, has not been transcribed. Any citations to his testimony reference the timestamp on the audio recording.

[72] Audio recording 8/4/15 at 11:43 a.m.

[73] *Id*. at 10:18 a.m.

[74] *Id*. at 10:38 a.m., 1:56 p.m.; *see also* ECF 192-3 (Strike Decl.), ECF 214 at 56:15–21 (transcript of San Martin testimony).

[75] Audio recording 8/4/15 at 10:41.

[76] *Id*. at 11:38–11:43 a.m. Having listed carefully to the audio recording of Strike's testimony, I disagree with defendants' contention that Strike's testimony had nothing to do with fraud or undercapitalization or cannot be a basis for the treble-damages award. ECF 211 at 6. I did not

Melissa San Martin—who explained that she is Lyon's daughter and worked for both NAFM and OIC during the relevant time periods here—testified that Alutiiq was "who we're protecting"[77] with the bond, eliminating any doubt that Alutiiq was the intended beneficiary of this performance bond and, thus, the party injured by defendants' fraudulent conduct that forms the predicate acts for the RICO claim. And when San Martin—defendants' only witness at the prove-up hearing admitted she had "no personal knowledge" of Alutiiq's costs to complete NCC's work,[78] defendants offered no competent evidence to undermine the reasonableness of Alutiiq's damages evidence and $1,562,666.31 total.[79]

Having reviewed the parties' evidentiary submissions and the testimony at the prove-up hearing, I find that this sworn testimony and the corroborating documents amount to competent and specific proof that Lyon's, Oceania's, and NAFM's RICO violations led directly to Alutiiq's business injury in the amount of $1,562,665.[80] Alutiiq has thus satisfied its burden of demonstrating its entitlement to "recover threefold the damages" it sustained.

---

consider attorneys' affidavits as evidence of the proximate cause for, or in finding proof of the amount of, treble damages. *See* ECF 211 at 13 (objecting that "the consideration of affidavits of counsel in a determination of the appropriateness of treble damages is improper"). Nor do I consider Judge Dawson's previous, vacated default judgment. I have also considered defendants' evidence and find it does not change my conclusion about the sufficiency of Alutiiq's evidence to establish its entitlement to RICO treble damages.

[77] *Id*. at 3:33, 3:36 p.m.

[78] *Id*. at 3:40 p.m.

[79] I do not find that defendants have offered credible, competent evidence of their entitlement to a setoff, so I overrule defendants' fifth objection. *See* ECF 211 at 24. I also find that the documents offered by Alutiiq at the prove-up hearing, coupled with the declarations of Wachsteter and Strike and Strike's live testimony, constitute the competent proof of what Alutiiq spent on replacement contractors. I thus do not rely on allegations in the complaint for this point and overrule defendants' third objection (that the magistrate judge improperly relied on the allegations in the complaint for this element), *see* ECF 211 at 19, as moot.

[80] *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

### 2. *$4,687,995 is the proper treble-damages amount.*

The magistrate judge properly recommended a treble-damages award against Lyon, NAFM, and Oceania, but the math must be adjusted. First, the recommended award of $3,643,561.26 is calculated from a base figure of $1,214,520.42, not $1,562,665. Second, the base figure merely gets multiplied by three to treble it; the court does not multiply the base figure by three *and* add that on top of the base figure. When these two mathematical issues are resolved, the treble-damages figure is $4,687,995.00 ($1,562,665.00 x 3 = $4,687,995.00). Defendants' objection that the magistrate judge quadrupled—not trebled—the award is sustained.

### D. The R&R improperly lumps OIC in with the other defendants in the total award.

Defendants next argue that, even though the magistrate judge did not award treble damages or attorneys fees against OIC, his final tally ends up doing so.[81] Defendants are right, as Alutiiq does not deny. The amount of the final judgment against OIC should not be the same as that against the other defendants. This objection is sustained.

### E. Attorneys fees and costs

Next, defendants argue that the magistrate judge's recommended award of $326,750.20 in attorneys fees and costs against NAFM, Oceania, and Lyon is unreasonable because this amount includes fees incurred before Alutiiq even sued these defendants, and it also compensates the lawyers for work done on the claims against OIC and Ruth Lyon.[82] Alutiiq's response is to merely "urge" me to adopt Magistrate Judge Ferenbach's recommended award.[83]

I have now scrutinized plaintiff's counsel's billing records line by line, and I agree that a reduction in the recommended fees and costs is appropriate. Although the OIC case began in July

---

[81] *See* ECF 208 at 21, lines 22–23 ("IT IS FURTHER RECOMMENDED that FINAL JUDGMENT be entered against OIC Marianas, NAFMS, Oceania, and Dennis Lyon in Alutiiq's favor in the amount of $5,582,096.38."). To the extent that Alutiiq again argues that the attorneys fees award should be extended to encompass OIC, that request is rejected. *See supra* at pp. 11–12.

[82] ECF 211 at 26.

[83] ECF 216 at 21.

2010, the Lyon case against NAFM, Oceania, and Lyon was not filed until a full year later.  By the time Alutiiq's counsel started working on the claims against these additional parties in earnest[84] in May 2011, Alutiiq's counsel had already billed $57,500.50 in fees and $916.01 in costs in the action against only OIC.[85]  I find no reasonable justification to stick Lyon, NAFM, and Oceania for this portion of the bill and will reduce the requested fees by these sums.[86]  Further reduction of the award by $5,726.00[87] to account for work performed only on the claims against Ruth Lyons is also justified, but I do not find that an additional reduction for OIC-only work after May 2011 is justified.  After that date, the issues are entirely too intertwined to fairly parse them (and the attorneys' bills) further, and $57,621.99 of the fees and costs spent on OIC-only discovery disputes have already been taken out of this calculation.[88]

Accordingly, I sustain defendants' objection to the attorneys-fees-and-costs award in part: I reduce the amount of the recommended award of fees and costs ($326,750.20[89]) by $64,142.51, but accept the magistrate judge's findings and recommendations on the attorneys fees award in all other respects.  I thus award **attorneys fees and costs to Alutiiq against Lyon, NAFM, and Oceania, jointly and severally, in the amount of $262,607.69**.[90]

**F.    Prejudgment interest**

Finally, I consider whether prejudgment interest should be awarded.  A trial court's

---

[84] Ball Janik, LLP had billed $55,665.50 in fees and $29.75 in costs, and Jolley Urga Woodbury & Little had billed $1,835.00 in fees and $886.26 in costs. *See* ECF 185-2 & 185-4.

[85] ECF 185-2 at 3–31.

[86] I reject defendants' invitation to award no fees before the date the complaint was filed in the Lyon case because there is significant overlap of the issues and work was being done with respect to the claims against Lyon, NAFM, and Oceania beginning at least in May 2011.

[87] *See* breakdown of these hours and fees at ECF 211, page 28.

[88] These fees and costs were awarded against OIC as discovery sanctions. *See* ECF 182; 185-1, ¶7; 189; 190.

[89] ECF 208 at 18.

[90] $326,750.20 - $64,142.51 = $262,607.69.

decision to award prejudgment interest on a federal claim is discretionary.[91]  "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."[92]  The magistrate judge recommends that I award Alutiiq prejudgment interest on the base damages against all defendants but not on the trebled-damage award, and he calculated that interest from 1,907 days before August 21, 2015 (the date of the R&R).

Defendants object that the magistrate judge incorrectly calculated prejudgment interest against them because (1) he started with the date the complaint against OIC was filed, not the date each defendant was served, and (2) the day-count was wrong: there were only 1,859—not 1,907—days from the filing of the OIC case to August 21, 2015.[93]  Alutiiq argues that the defendants rely on the wrong statute when claiming that the service date is the trigger; the trigger date for interest in this case is the date OIC failed to pay under the performance bond, which is June 4, 2010, because there is a contract and, thus, NRS 99.040 controls.

Alutiiq is half right: prejudgment interest begins to run for OIC on June 4, 2010,[94] under NRS 99.040(c) because OIC's liability is founded upon the performance bond.  **OIC** is therefore obligated to pay prejudgment interest for 2,050 days, at a rate of 5.25% (the rate in effect on June 4, 2010, and which amounts to $224.76688/day on $1,562,665.00)[95], for a total of **$460,772.10 in prejudgment interest** as of January 14, 2016.

But Lyon's, NAFM's, and Oceania's liability in this case is not based on a contract.[96]  The

---

[91] *See Home Sav. Bank, F.S.B. by Resolution Trust Corp. v. Gillam*, 952 F.2d 1152, 1165 (9th Cir. 1991) ("The award of prejudgment interest in a case arising under federal law rests within the sound discretion of the court.") (citation omitted).

[92] *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 195 (1995).

[93] ECF 211 at 29.

[94] ECF 29-3, (Wachsteter decl.) ¶ 10.

[95] NRS 99.040(1) (setting rate); http://www.fid.state.nv.us/prime/primeinterestrate.pdf, last visited on 1/12/16.

[96] Alutiiq did not plead any contract claims against these defendants.  *See* ECF 1 in 11-cv-1104.

prejudgment-interest award against these defendants, if any, is authorized instead by NRS 17.130, which provides that the judgment draws interest from the time of service of the summons and complaint.[97] The defendants in the Lyon case were served on July 22, 2011—1,637 days ago.[98] I agree that the trebling of damages against these defendants has ensured that Alutiiq is fully compensated for any delay in payment, so I do not order these defendants to pay prejudgment interest on the trebled damages, just on the base damages of $1,562,665. The prejudgment interest rate under NRS 17.130 is the one in effect at the time of the entry of the judgment, which is 5.50%.[99] Accordingly, **Lyon, NAFM, and Oceania** are obligated to pay prejudgment interest for 1,637 days, at a rate of 5.50% (the rate in effect today, and which amounts to $235.47006/day on $1,562,665.00),[100] for a total of **$385,464.48 in prejudgment interest** as of January 14, 2016.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Magistrate Judge Ferenbach's Report and Recommendation **[ECF 208] is adopted in part consistent with this order**;

IT IS FURTHER ORDERED THAT Alutiiq's oral motion for voluntary dismissal is granted and **all claims against Ruth Chavez Lyon are DISMISSED without prejudice**;

IT IS FURTHER ORDERED THAT Alutiiq's Motion for Default Judgment **[ECF 185] is GRANTED in part and DENIED in part consistent with this order**;

IT IS FURTHER ORDERED that Plaintiff Alutiiq International Solutions' Objections **[ECF 212]** and Defendants' Objections **[ECF 211] are SUSTAINED IN PART AND**

---

[97] Nev. Rev. Stat. § 17.130(2).

[98] ECF 18–21 in 11-cv-1104.

[99] *Kerala Properties, Inc. v. Familian*, 137 P.3d 1146, 1150 (Nev. 2006) (quoting *Lee v. Ball*, 116 P.3d 64, 67 (Nev. 2005), and noting, "we have recently addressed NRS 17.130(2)'s nearly identical language and concluded that the prejudgment interest rate must be a fixed rate, calculated at 'the single rate in effect on the date of judgment.'"); Nev. Rev. Stat. § 17.130(2) (setting rate); http://www.fid.state.nv.us/prime/primeinterestrate.pdf, last visited on 1/12/16.

[100] NRS 99.040(1) (setting rate); http://www.fid.state.nv.us/prime/primeinterestrate.pdf, last visited on 1/12/16.

1 **OVERRULED IN PART AS STATED IN THIS ORDER**;

2     IT IS FURTHER ORDERED that the April 9, 2015, judgment **[ECF 190] is STRICKEN**

3 and any amounts stated therein are incorporated instead into this judgment.

4     And with good cause appearing and no reason for delay, IT IS HEREBY ORDERED,

5 ADJUDGED, AND DECREED that **FINAL JUDGMENT be entered in favor of Alutiiq and**:

6     1.    **Against defendant OIC Marianas Insurance Corporation** as follows:

7         a.    Actual and compensatory damages of $1,562,665; plus

8         b.    $460,772.10 in prejudgment interest; plus

9         c.    Litigation sanctions of $57,621.99[101]

10 for **a total judgment against OIC Marianas Insurance Corporation of $2,081,059.09**,

11 which will accrue post-judgment interest at the legal rate until paid in full;

12     2.    **Against defendants Native American Funds Management Service and**

13         **Oceania Insurance Corporation, jointly and severally,** as follows:

14         a.    Treble damages of $4,687,995.00; plus

15         b.    $385,464.48 in prejudgment interest; plus

16         c.    Attorneys fees and costs of $262,607.69

17 for **a total judgment against Native American Funds Management Service and**

18 **Oceania Insurance Corporation, jointly and severally with one another and Dennis**

19 **Lyon, of $5,336.067.17**, which will accrue post-judgment interest at the legal rate until

20 paid in full; and

21     3.    Against defendant **Dennis Lyon aka Robert Joe Hanson** as follows:

22         a.    Treble damages of $4,687,995.00; plus

23         b.    $385,464.48 in prejudgment interest; plus

24         c.    Attorneys fees and costs of $262,607.69

---

[101] ECF 182, 189. To the extent that I previously ordered that the sanctions in the Lyon case ($9,674.30, ECF 89 in 11-cv-1104) be incorporated into the judgment against OIC, *see* ECF 189, I find that was error and now reverse that decision and enter those additional sanctions only against Lyon.

        d.     Attorneys fees and costs associated with the motion to compel in the Lyon case (ECF 89 therein) of $9,674.30

for **a total judgment against Dennis Lyon aka Robert Joe Hanson of $5,345,741.47** ($5,336.067.17 of which is jointly and severally with defendants Native American Funds Management Service and Oceania Insurance Corporation), which will accrue post-judgment interest at the legal rate until paid in full.

**The Clerk of Court is directed to enter final judgment and close these consolidated cases.**

Dated January 14, 2016.

_____
Jennifer A. Dorsey
United States District Court Judge